IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17-cv-01335 |
| | ) | |
| v. | ) | |
| | ) | Judge Solomon Oliver, Jr. |
| OBERLIN COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF JOHN DOE'S
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Federal Rule of Civil Procedure 15(a)(2) allows for pleadings to be amended more than 21 days after the filing of a motion to dismiss only upon "the opposing party's written consent or the court's leave." But courts "should freely give leave when justice so requires," *id.*, and justice requires it here. On January 10, John Doe became aware of a YouTube video in which Meredith Raimondo, the architect and chief implementer of Oberlin's Title IX regime at the time Mr. Doe was a student there, spoke openly about the gender bias with which she approached Title IX enforcement at Oberlin, *especially* in cases like Mr. Doe's—ones that involved neither predators nor sex with someone who is fundamentally unconscious. Ms. Raimondo noted that such cases are often called "grey areas" and stated her belief that referring to those cases as "grey areas" of consent discredits "women's experiences of violence in particular." Ex. 1 (Amended Complaint) ¶ 59. Those comments, and others discussed below, are direct evidence that gender bias shaped Oberlin's adjudication of claims like Jane Roe's. They are precisely the type of facts that suffice to state an "erroneous outcome" claim under Title IX. *See Doe v. Cummins*, 662 Fed. App'x 437, 452 (6th Cir. 2016) (causal link between flawed outcome and gender bias "can be shown via

statements by members of the disciplinary tribunal [or] *statements by pertinent university officials*") (emphasis added); *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016) (erroneous outcome claim survives motion to dismiss when facts alleged in complaint support the same "minimal plausible inference" of gender discrimination required under Title VII). Mr. Doe respectfully requests leave to file Exhibit 1 as his Amended Complaint in this matter.

## FACTUAL BACKGROUND

On February 28, 2016, John Doe and Jane Roe talked, kissed, and engaged in vaginal intercourse in Mr. Doe's room for approximately 45 minutes. Dkt. No. 1-4 (Compl.) ¶ 179. Ms. Roe, by her own testimony, showed no outward signs of intoxication at all during that time. *Id.* ¶¶ 124-25. After those 45 minutes, she told Doe, "I'm not sober right now," *id.*, as a way to explain why her vagina was dry, *id.* ¶ 72. Mr. Doe immediately stopped having vaginal intercourse with her and asked her if she would perform oral sex on him. *Id.* ¶ 73. She agreed to do so, then left his room under her own power, with no difficulty, after talking for a few minutes afterwards. *Id.*

Nine days later, however, Ms. Roe would tell Oberlin's Title IX Coordinator, Meredith Raimondo, that Mr. Doe had sexually assaulted her. *Id.* ¶ 74. She claimed during Oberlin's investigation of her allegations that she had been "incapacitated"—an extreme level of intoxication that leaves a person unaware of their surroundings and unable to make decisions for themselves—but she admitted at her hearing that the only outward sign Doe could have seen of any level of intoxication on her part was her verbal statement, "I am not sober right now," a phrase she did not claim to slur or stumble over in any way. *Id.* ¶ 97. And she claimed at the hearing—though not in the investigation—that Doe had actually used force to make her perform oral sex on him against her physical resistance. *Id.* ¶ 121.

Oberlin did not credit the allegation of force belatedly raised by Ms. Roe. And it concluded that John Doe had no way of knowing that Jane Roe was incapacitated during the 45 minutes that they talked, kissed, and had vaginal intercourse. *See id.* ¶ 151. But it concluded, based solely on Roe's statement, "I am not sober right now," that John Doe should have known she was so drunk as to be incapacitated when he asked her to perform oral sex, and expelled him. *Id.* ¶ 151, 154, 158.

## PROCEDURAL HISTORY

On June 23, 2017, John Doe filed a complaint in this Court for breach of contract, violation of Title IX, and three other claims. *See* Dkt. No. 1-4. He alleged facts plausibly showing that he had been wrongfully expelled and that his expulsion was the product of systemic gender bias in Oberlin's adjudication of sexual misconduct claims by women against men. As to the latter, he alleged, among other things, that in the nine months preceding Roe's complaint:

- Ms. Raimondo had said, in <u>May of 2015</u>, that she implements Oberlin's Sexual Misconduct Policy "as a feminist committed to survivor-centered processes." *Id.* ¶ 55.[1]

- The Education Department's Office for Civil Rights (OCR), which was widely known to be enforcing a gendered view of Title IX, in <u>November of 2015</u> launched a "systemic investigation" into Oberlin's handling of sexual misconduct claims. Compl. ¶ 48.[2]

- Every student <u>that academic year</u> sent by Oberlin through its formal resolution process—all or most of whom were male—was found responsible on at least one charge. Compl. ¶ 54.[3]

---

[1] *See Cummins*, 662 Fed. App'x at 452 ("statements by pertinent university officials" can support inference of gender bias).

[2] *See Cummins*, 662 Fed. App'x at 453 (allegation that school "was being investigated by the federal government" is fact that "support[s] an inference" of gender bias); *Columbia Univ.*, 831 F.3d at 57-58 (public criticism of handling of sexual misconduct allegations supports inference of gender bias).

[3] *See Cummins*, 662 Fed. App'x at 452 ("patterns of decision-making that also tend to show the influence of gender" support an inference of gender bias).

3

On August 21, 2017, Oberlin moved to dismiss Mr. Doe's complaint. *See* Dkt. No. 10. As is relevant here, Oberlin maintained that Mr. Doe failed to plead facts that supported an inference of gender bias under Title IX, *see* Dkt. No. 10-1 at 6-15, that his claim for breach of the covenant of good faith and fair dealing (Count II) could not exist as an independent claim, *id.* at 18-19, and that his claim for negligent infliction of emotional distress (Count V) failed as a matter of law, *id.* at 20. In opposing Oberlin's motion, Doe voluntarily dismissed Count V and narrowed the scope of Count II. *See* Dkt. No. 12 at 3 n. 1. As to his Title IX claim, Doe argued that a litany of facts amply supported an inference of gender bias, whether (1) under the framework articulated in *Doe v. Columbia University*, which he urged this Court to follow;[4] (2) as compared with recent case law in this District finding gender bias outside the *Columbia University* framework;[5] and (3) under the criteria identified in *Doe v. Cummins*.[6] Oberlin filed a reply in support of its motion on October 4, 2017. *See* Dkt. No. 13.

As of January 10, 2018, no argument on Oberlin's motion to dismiss had been scheduled, no Case Management Conference had been scheduled, and the docket reflected no further activity by the parties. On that day, John Doe and his counsel became aware of a YouTube video in which Ms. Raimondo spoke on a panel hosted by the American Constitution Society (ACS) about the enforcement of Title IX on college campuses in general and about her enforcement of Title IX at Oberlin in particular. *See* Declaration of Christopher C. Muha ("Muha Declaration") at 1. The video contained new evidence of the gender bias with which Ms. Raimondo enforced

---

[4] Dkt. No. 12 at 9-12.
[5] Dkt. No. 12 at 13-14.
[6] Dkt. No. 12 at 12, 14-15.

4

Title IX at Oberlin, especially in cases like Mr. Doe's that do not involve an unconscious victim or the use of force.

Counsel for Mr. Doe finalized the amended complaint on January 26.  It included the following new allegations, all of them statements that Ms. Raimondo made on the panel on June 13, 2015:

- That "what Title IX has done is to 'visibilize [sic] gender-based harms and the way in which that has predominantly affected women.'" Ex. 1 (Amended Compl.) ¶ 57.

- That the "first goal of a Title IX hearing at Oberlin . . . is to provide 'a safe supporting space for someone to ask, "What are the harms you experienced and how can we address them so you can continue your education?"'" *Id.*

- That a benefit of Title IX disciplinary hearings is that they "'open the possibility of clarifying that most men in college don't assault people,'" betraying Ms. Raimondo's understanding of the respondents around whom the process is not centered.  *Id.* ¶ 58.

- Most critically, that she is "uncomfortable" referring to the "middle category" of sexual assault cases—those involving neither predators nor someone who is fundamentally unconscious—as "grey areas" of consent "'because I think it's too often used to discredit particularly women's experiences of violence.'" *Id.* ¶ 59.

The amended complaint added one final allegation on the matter: that "[i]n practice, the hearing system of which Raimondo was an architect and its chief implementer operates with a predetermined and unwavering assumption that female accusers have experienced violence, an assumption that cannot be dislodged regardless of the facts presented." *Id.* ¶ 68.

Because John Doe had voluntarily dismissed Count V (negligent infliction of emotional distress) in his opposition to Oberlin's motion to dismiss (Dkt. No. 12), the amended complaint deleted that count.  Muha Declaration at 1.  It also rolled Doe's narrowed claim for breach of the covenant of good faith and fair dealing into his breach of contract claim.  Ex. 1 ¶¶ 195-201.

Around 12:30 p.m. on January 26, counsel for Mr. Doe sent counsel for Oberlin a courtesy copy of the amended complaint in advance of filing.  *See* Ex. 2 (Email of Christopher

5

Muha to David Wallace, Jan. 26, 2018). Counsel for Mr. Doe told counsel for Oberlin that "[t]he primary changes" concerned "a panel in which Ms. Raimondo participated in June of 2015, which we just recently became aware of" and identified the paragraphs where those changes were found for ease of reference. *Id*. Counsel for Mr. Doe also flagged that Count V had been deleted to reflect the withdrawal of that claim and that the claim for breach of the covenant of good faith and dealing was being rolled into the breach of contract claim. *Id.* Shortly before 7:00 p.m., counsel for Doe filed the amended complaint (Dkt. No. 14). Counsel for Oberlin never replied to the email.

On February 6, Oberlin moved to strike Docket No. 14 because Mr. Doe had failed to obtain its consent or seek leave from this Court to file the amended complaint. Dkt. No. 19-1 at 3. Oberlin furthermore stated in its motion that it would not consent to Doe filing the Amended Complaint. *Id.* at 1. It also pre-emptively argued that no motion for leave should be granted by stating—tellingly, without elaboration—that Ms. Raimondo's newly discovered comments "do not satisfy the pleading standard of a Title IX claim," and by maintaining that the "slight differences" between the two complaints "should not require the Parties to rework" their briefing on the Motion to Dismiss. *Id.* at 5.

On February 7, Doe filed a motion to withdraw Docket No. 14 for the reasons stated in Oberlin's motion to strike. Doe now seeks leave to file the Amended Complaint he originally submitted as Docket No. 14.

## LEGAL STANDARD

Rule 15(a)(2) states that courts "should freely give leave" to amend pleadings "when justice so requires." "[T]he thrust of Rule 15 is . . . that cases should be tried on their merits rather than the technicalities of pleadings." *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425

6

(6th Cir. 1999). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The rule therefore "assumes a liberal policy of permitting amendments." *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005) (internal citations and quotation marks omitted); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (Rule 15 is "to be applied with extreme liberality").

That does not mean it is never appropriate for a court to deny a Rule 15(a)(2) motion. Denying leave is appropriate in instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182. But "in the absence of" these or similar factors, "the leave sought should, as the rules require, be 'freely given.'" *Id.*; *see also Kesterson v. Kent State Univ.*, No. 5:16-CV-298, 2017 WL 995222, at *17 (N.D. Ohio Mar. 15, 2017) (relying on *Foman* and granting leave to amend Title IX complaint where "there is no evidence that plaintiff was dilatory in seeking such relief, that she has acted in bad faith, or that she has repeatedly tried unsuccessfully to cure deficiencies in her original pleading").

**ARGUMENT**

The factual allegations Doe seeks to add to his complaint are highly relevant to his claim that Oberlin violated his rights under Title IX when it expelled him. Ms. Raimondo's statements at the ACS panel on June 13, 2015, directly reveal the role that gender bias played in her enforcement of Title IX at Oberlin, especially in "grey area" cases, which is exactly what Ms. Roe alleged hers to be (until the hearing) and exactly what the hearing panel concluded it was. None of the factors that make it appropriate to deny a motion to amend under Rule 15(a)(2) are

present here. Justice requires that Mr. Doe be granted leave to amend so that his claims might be judged on the merit of all of the available evidence.

### A. Mr. Doe Has Not Unduly Delayed in Seeking to Amend His Complaint.

First, Mr. Doe has not unduly delayed in seeking to amend. Neither the seven-month gap from the time he filed his complaint nor the three-month gap from the time that briefing on Oberlin's motion to dismiss was completed are reasons to deny Mr. Doe's motion, because "'[d]elay by itself' is not sufficient to deny a motion to amend." *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998). That is especially true given the early posture of this case and the lack of activity over the past three months. *See Security Ins. Co. v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995) (district court abused its discretion in denying motion to amend despite plaintiff's 16-month delay in filing motion to amend, because the action had been dormant for 13 of those months and the case was at its earliest stage of pretrial activity, with discovery cut-off and trial dates not having been set).[7]

Nor did John Doe unduly delay in seeking to amend once he discovered Ms. Raimondo's June 2015 statements. John Doe filed his Amended Complaint 16 days after discovering Ms. Raimondo's statements, and now files this motion less than one month from the time of that discovery. *See* Muha Declaration at 1 (affirming video was discovered on January 10, 2018).

---

[7] As another federal district court has noted, courts have granted leave to amend at every conceivable stage of litigation. *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010) (noting that courts have granted leave to amend "following discovery; after a pretrial conference; at a hearing on a motion to dismiss or for summary judgment; after a motion to dismiss has been granted but before the order of dismissal has been entered; when the case is on the trial calendar and has been set for a hearing by the district court; at the beginning, during, and at the close of trial; after a judgment has been entered; and even on remand following an appeal") (internal citation and quotation marks omitted).

8

That length of time is not undue, even in cases much further along than this one. *See, e.g.*, *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357-58 (7th Cir. 2015) (district court abused its discretion in denying motion to amend one month before discovery cutoff where plaintiff moved to amend 10 days after discovering new facts); *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 32–33 (D.D.C. 2012) (plaintiff who obtained new evidence from Dec. 2011 through Feb. 13, 2012 did not unduly delay in waiting until March 9, 2012 to move to amend complaint based on new facts).

      **B.    Amending Will Not Unduly Prejudice Oberlin.**

Allowing Mr. Doe to amend his complaint will not unduly prejudice Oberlin, and Oberlin identifies no genuine source of prejudice in its Motion to Strike. It suggests just two possible sources. First, Oberlin contends that Mr. Doe seeks to drop his claims for negligent infliction of emotional distress and breach of the covenant of good faith "'in order to avoid the impact of a dispositive motion.'" Dkt. No. 19-1 at 5. The "impact" to which Oberlin refers is unclear, and Doe has no intention of reviving those two claims.[8] If gamesmanship were his aim, he would have amended the complaint months ago. The sole motivation for amending the complaint was the addition of the newly discovered statements by Ms. Raimondo. Muha Declaration at 1. Once it was decided to amend, Mr. Doe removed the "negligent infliction" claim from the complaint because it would have been disingenuous to file an amended complaint that contained an abandoned claim. Had he *not* removed that claim from the Amended Complaint, Oberlin likely would be accusing Doe of trying to revive a claim he had abandoned.

---

[8] The case Oberlin relies on here, *Stark v. Mars, Inc.*, 790 F. Supp. 2d 658 (S.D. Ohio 2011), denied the plaintiff's motion to amend because the plaintiff specifically sought to dismiss two counts *without* prejudice, suggesting an intent to perhaps refile them later. *Id.* at 663.

Mr. Doe likewise has no intention of reviving his claim for breach of the covenant of good faith and fair dealing.  He rolled that claim into his breach of contract claim to conform his allegations to Oberlin's theory that the covenant exists only as part of a breach of contract claim.  Oberlin suffers no prejudice from that.  *Oregon Nat. Desert Ass'n v. McDaniel*, 751 F. Supp. 2d 1151, 1156-57 (D. Or. 2011) ("I do not see how permitting ONDA to amend its complaint to conform to BLM's legal theory would create a hardship for BLM.").[9]  The allegations formerly in Count II were moved into Count I without change, and Oberlin addressed those allegations on their merits in its Rule 12 briefing, *see* Dkt. No. 10-1 at 18-19; Dkt. No. 13 at 14-15, including as allegations supporting a breach of contract, *see* Dkt. No. 13 at 15.  Oberlin suffers no prejudice from their move from Count II to Count I.

The second source of prejudice Oberlin identifies is that the allegedly "slight differences between the two pleadings" will require both parties "to rework and resubmit their combined 57 pages of briefing on Oberlin's Motion to Dismiss."  Dkt. No. 19-1 at 5.  **But if the "differences between the two pleadings" are "slight," then Oberlin has little need to substantially rework anything.**  The changes to the Amended Complaint based on Ms. Raimondo's new statements total approximately two pages, some of which is repetitive.  There is no reason to think that Oberlin must rework 37 pages worth of briefing—much of which concerned Doe's other claims—to address these new allegations.  Oberlin is inevitably going to argue what it already has: that this, too, does not constitute evidence of a Title IX violation.  The amended portion consists only of new *facts* in support of an argument Oberlin has fully briefed; it contains no new *arguments*.

---

[9] *See also Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 98 (S.D.N.Y. 2010) ("A change in litigation strategy is a legitimate reason for seeking to amend a pleading under the liberal standard of Rule 15(a), . . . as is the correction of potential deficiencies in the complaint.").

10

Even if a need for substantial revision existed, however, such a need is already contemplated by the federal and local rules and can rarely, by itself, be considered unduly prejudicial. Rule 15(a)(1) expressly allows plaintiffs to amend as of right within 21 days of the filing of a motion to dismiss, which amending would require the same kind of revision by Oberlin then that it may (or may not) elect to do here. Local Civil Rule 16.1(b)(4) likewise contemplates that Case Management Plans will set "deadlines for amending pleadings and adding parties," putting parties on notice that amendment is fairly contemplated long past the briefing of motions to dismiss. The "slight" differences between Mr. Doe's two complaints will not unduly prejudice Oberlin should it want to brief the new allegations.

### C. Amending is Far from Futile.

Finally, Oberlin asserts, without explaining, that amending the complaint with the newly discovered statements of Ms. Raimondo would be futile. Dkt. No. 19-1 at 5. Hardly. Ms. Raimondo's statements speak directly to the role that gender bias plays in Oberlin's process. Her statement that Title IX serves to "visibilize [*sic*] gender-based harms and the ways in which that has predominantly affected *women*," Compl. ¶ 57 (emphasis added), reinforces the inference that the "survivor-centered process" she established "as a feminist" has a gendered view of its prototypical complainant. Likewise, her statement that Title IX proceedings benefit men by revealing "that most men in college don't assault people," *id.* ¶ 58, reinforces the inference that the process has a gendered understanding of its prototypical respondent.

But most critically, Ms. Raimondo's statement that speaking of "grey areas" of sexual consent "is used too often to discredit particularly *women's* experiences of violence," *id.* ¶ 59 (emphasis added), is direct evidence that gender bias plays a role in Oberlin's resolution of such

11

"grey area" cases. Specifically, it supports an inference that Oberlin, like Ms. Raimondo, avoids characterizing "grey area" cases as such.

That, in fact, is precisely what John Doe's hearing panel did. Despite Roe's 11th hour claim that Doe physically forced her to perform oral sex on him, the panel concluded only that Roe had been too incapacitated to consent to sexual activity, making it exactly the kind of "grey area" case Ms. Raimondo prefers not to characterize as such. And it then pretended that a single statement from Roe—"I am not sober right now"—that came after 45 minutes of completely sober-seeming talk, kissing and sex, *see* Compl. ¶ 179, was enough to tell Mr. Doe that Roe was incapacitated—that she was "'extremely drunk,'" and "'no longer underst[ood] who [she was] with or what [she was] doing.'" *Id.* ¶ 21 (quoting Oberlin's definition of incapacitation). There was no possible "grey area" for the panel: *Any* indication at all that Roe was intoxicated, no matter how slight, meant that Mr. Doe had to be punished as though her incapacity were clear. And not with some kind of moderate punishment either, but expelled—there, too, the process did not permit grey areas.

That is not some aberration in Oberlin's process; that is the natural and foreseeable result of a survivor-centered process implemented by someone who believes that speaking of "grey areas" of consent discredits "women's experiences of violence." Ms. Raimondo's statements, together with Oberlin's implementation of those same ideas, amply and independently support a plausible inference of gender bias.

The Motion to Strike understandably tries to downplay the significance of Ms. Raimondo's comments by characterizing them as "comments made by Oberlin's former Title IX coordinator . . . more than two years before Plaintiff filed his Complaint." Dkt. No. 19.1 at 5. **But Ms. Raimondo was not the "former" Title IX Coordinator at the time of the events in**

12

**question; she was its *current* one for much of Mr. Doe's investigation—and had been for quite some time—and she was supervising the interim coordinator who replaced her at the time Mr. Doe's case was decided.** Compl. ¶ 38. Likewise, her comments about the influence of gender in her decision-making process were not made "two years" before the actual events in question. They were made in June of 2015—just one month after Ms. Raimondo stated that she approached her work as Oberlin's Title IX Coordinator "as a feminist committed to survivor-centered processes," Compl. ¶ 55, and just two months before the 2015-16 academic year, when Oberlin came under OCR investigation, *id.* ¶ 48, and had a 100% conviction rate in cases sent through its formal resolution process, *id.* ¶ 54. That, of course, is the same year it investigated Jane Roe's allegations against John Doe. The timing of the new statements could hardly be more relevant.

Mr. Doe's original complaint pled facts that amply supported an inference of gender bias, for a host of reasons. His Amended Complaint does so even more. Mr. Doe's proposed amendments are far from futile. Indeed, if the allegedly "slight" differences Mr. Doe introduced in his Amended Complaint were so clearly futile with respect to his Title IX claim, Oberlin would not have bothered to move to strike them. Oberlin implicitly recognizes them for what they are: express statements by Oberlin's Title IX Coordinator about the role that gender plays in the adjudication of the kind of allegations brought by Jane Roe. Justice requires that Mr. Doe be permitted to amend his complaint with those statements.

## CONCLUSION

For the foregoing reasons, John Doe respectfully requests that his Motion for Leave to File Amended Complaint be granted.

DATED:  February 7, 2018	Respectfully submitted,

/s/ Christopher C. Muha
Justin Dillon (D.C. Bar No. 502322)
Christopher C. Muha (Ohio Bar No. 0083080)
KAISERDILLON PLLC
1401 K Street NW, Suite 600
Washington, DC 20005
(202) 640-2850
(202) 280-1034 (facsimile)
jdillon@kaiserdillon.com
cmuha@kaiserdillon.com

*Attorneys for Plaintiff John Doe*

14