**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO. 1:17-cv-01335** |
| | ) | |
| **v.** | ) | **Judge Solomon Oliver, Jr.** |
| | ) | |
| OBERLIN COLLEGE, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT OBERLIN COLLEGE'S OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff John Doe recognizes his Complaint fails to state a Title IX claim against Defendant Oberlin College ("Oberlin").  Briefing on Oberlin's motion to dismiss was completed more than four months ago, but in a last-ditch effort to save his claim, Plaintiff sought leave to file an amended complaint.  Plaintiff's "sole motivation" for doing so is to add snippets of statements that Dr. Meredith Raimondo, Oberlin's former Title IX coordinator who did not investigate the misconduct charges brought against him, made during a June 13, 2015 American Constitutional Society panel discussion ("ACS Panel").  Pl.'s Mot. for Leave to Amend, at 9 (DE 21-1).  Dr. Raimondo's comments, as captured in a YouTube video published on June 23, 2015, do not raise an inference that Oberlin's Title IX disciplinary process, which led a three-person Hearing Panel to find Plaintiff responsible for sexually assaulting another student, is infused with gender-bias.  Instead, Dr. Raimondo's remarks are those of a college administrator concerned for fostering a fair disciplinary process with the interests of students who both report and respond to complaints of sexual misconduct in mind.

The Court should not indulge Plaintiff's delayed cherry-picking of statements from a YouTube video that he chose not to reference in his original complaint.  Nor should Oberlin be required to re-brief its Motion to Dismiss.  As set forth in more detail below, Plaintiff's attempt

to amend his complaint is futile because the revised version still fails to state a Title IX claim. The Court should deny Plaintiff's motion and, for the reasons set forth below and in Oberlin's motion to dismiss briefing (DE 10-1 and DE 13), dismiss Plaintiff's Complaint with prejudice.

## PROCEDURAL HISTORY

Plaintiff initiated this litigation on June 23, 2017, by filing a Complaint (DE 1) against Oberlin that alleged violations of Title IX, 20 U.S.C. § 1681, and four claims under Ohio law: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) negligence; and (4) negligent infliction of emotional distress.  Pursuant to Rule 12(b)(6), Oberlin sought to dismiss Plaintiff's Complaint on August 21, 2017, for failing to state a claim under which relief can be granted (DE 10).  Rather than file an amended complaint, Plaintiff opposed Oberlin's Motion to Dismiss (DE 12).  Oberlin filed a reply on October 4, 2017 (DE 13), which completed briefing on the Motion to Dismiss.

On January 26, 2018, without seeking, let alone obtaining leave of Court or Oberlin's written consent, Plaintiff filed an Amended Complaint (DE 14).  In response to Oberlin's motion to strike the proposed Amended Complaint (DE 19), Plaintiff voluntarily withdrew it (DE 20). On February 7, 2018, Plaintiff filed a Motion for Leave to File his Amended Complaint ("Motion to Amend") and re-attached the proposed amendment as an exhibit (DE 21 & DE 21-2).  Plaintiff explained that his "sole motivation" in seeking to file the Amended Complaint was to add brief excerpts of statements made by Dr. Raimondo during the ACS Panel, as captured in a YouTube video posted on June 23, 2015.  Pl.'s Mot. to Amend, at 9 (DE 21-1).  Plaintiff has explained that the snippets from Dr. Raimondo's ACS Panel comments altered four paragraphs in the proffered amendment.  *Id.* at 5 (identifying that the new allegations are limited to paragraphs 57, 58, 59 & 68 of the Amended Complaint).  In addition, Plaintiff's proposed

amendment reflects that he has dismissed Count II (breach of the covenant of good faith and fair dealing) and Count V (negligent infliction of emotional distress), both of which he already agreed to dismiss in opposition to Oberlin's Motion to Dismiss.  *Id.* at 5; Pl. Opp. at 3 n. 1 (DE 12).

## LAW AND ARGUMENT

While Rule 15(a)(2) states that a "court should freely give leave" to amend pleadings "when justice so requires," leave is not appropriate in many instances.  A motion for leave to amend may be denied "where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc."  *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quotation and citation omitted) (emphasis in original).  In particular, a "proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017).  Here, permitting Plaintiff to amend his complaint is futile because, as set forth below and in the briefing on Oberlin's motion to dismiss, Plaintiff has failed to state a Title IX claim.[1]  In addition, Plaintiff has not explained why he failed to discover the YouTube Video—which has been publicly available since June 23, 2015—prior to filing his Complaint such that the Court should excuse his delay and force Oberlin to resubmit its motion to dismiss, which is ripe for adjudication.

---

[1] In his Motion to Amend, Plaintiff explains that the new allegations in the proposed amendment affect only Count II, his Title IX claim.  *See* Pl.'s Mot. to Amend, at 7 (stating that the new allegations are relevant to whether "Oberlin violated his rights under Title IX when it expelled him").  Plaintiff's breach of contract and negligence claims should be dismissed for the reasons set forth in Oberlin's briefing on its motion to dismiss.  Oberlin Br. at 15-2 (DE 10-1); Oberlin Reply at 12-17 (DE 13).

I.      **The Proposed Amendment of the Complaint is Futile and Should be Denied**.

Plaintiff in his Motion to Amend fails to identify the pleading standard under which his erroneous-outcome Title IX claim must be evaluated.  As recently affirmed by the Sixth Circuit, in order to state such a claim, a plaintiff must allege:  "(1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a *particularized . . . causal connection* between the flawed outcome and gender bias."  *Doe v. Miami Univ.*, --- F.3d ---, 2018 WL 797451, at *8 (6th Cir. Feb. 9, 2018) (quoting *Doe v. Cummins*, 662 Fed.Appx. 437, 452 (6th Cir. 2016) (emphasis added)).[2]  Plaintiff's Complaint fails to satisfy this standard, as set forth in Oberlin's motion to dismiss briefing, and the new allegations in the Amended Complaint do not save Plaintiff's claim so any amendment would be futile.

A.      **The Comments of Dr. Raimondo that Plaintiff Cherry-Picked from the  June 13, 2015, ACS Panel Discussion Do Not Raise an Inference of Gender Bias.**

The excerpted comments of Dr. Raimondo that Plaintiff plucks from the ACS Panel discussion fail to show a "particularized . . . casual connection" between the outcome of his disciplinary proceeding and gender bias.  As an initial matter, Dr. Raimondo's remarks do not reference Plaintiff or his disciplinary proceeding—nor can they—because the ACS Panel occurred more than nine months before the February 28, 2016 incident between Plaintiff and Ms. Roe that led a Hearing Panel—of which Dr. Raimondo was not a member—to find him responsible for committing sexual assault.  Given that Plaintiff bases his proposed Amended Complaint on the YouTube video, the Court may consider all of Dr. Raimondo's comments, and not just the fragments Plaintiff identifies, in resolving the Motion to Amend.  *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) (the entirety of a video referenced in plaintiff's

---

[2] In *Miami*, the Sixth Circuit expressly rejected the reduced pleading standard adopted by the Second Circuit in *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) and which Plaintiff urged this Court to follow in both his Opposition to Oberlin's Motion to Dismiss and his Motion to Amend.  *See e.g.*, Pl.'s Opp. at 2, 9 (DE 12); Pl.'s Mot. to Amend, at 2, 4 (DE 21-1).

complaint may be considered in resolving a motion to dismiss).  Yet, whether viewed in isolation or in the broader context of the ACS Panel, Dr. Raimondo's remarks do not raise an inference that Oberlin's decision, following a full investigation and a hearing, to find Plaintiff responsible for sexual assault was the result of gender bias.

First, Plaintiff identifies that he believes Dr. Raimondo "views sexual misconduct as an offense committed prototypically *by* men *against* women."  Am. Compl. ¶ 57 (emphasis in original).  Plaintiff shares this view, at least in regard to Oberlin, where he claims that the "vast majority" of sexual misconduct complaints are brought by women against men.  Am. Compl. ¶ 55.  Yet Dr. Raimondo cautioned the audience at the ACS Panel not to view Title IX as "anti-men" because "most men in college don't assault people."  *Id.* ¶ 58.

If Plaintiff is suggesting that his Title IX claim should not be dismissed because more women than men on college campuses, including at Oberlin, are allegedly victims of sexual assault, courts recognize this disparity and hold that it cannot be the basis for a Title IX claim. *See e.g.*, *Doe v. St. John's Univ.*, No. 17-2413, 2017 WL 4863066, at *4 (D. Minn. Oct. 16, 2017) (noting that Title IX "enforcement is likely to have a disparate impact on the sexes" and citing statistics from the National Sexual Violence Resource Center that "fewer than one out of every ten sexual assault victims is male"); *Pierre v. Univ. of Dayton*, No. 15-cv-362, 2017 WL 1134510, at *11 (S.D. Ohio Mar. 27, 2017) ("The University has no control over the gender of a student who accuses another student of sexual misconduct, nor over the gender of the student so accused."); *see also* Oberlin Br. at 12 (DE 10-1) (citing cases).  In addition, immediately following the excerpt cherry-picked by Plaintiff, Dr. Raimondo explained that Title IX procedures should not "assume that women are the only people who report" sexual misconduct claims, which is consistent with Plaintiff's recognition that both male and female Oberlin

students are accused of sexual misconduct.[3] *See* Am. Compl. ¶ 55; *see also e.g.*, *Doe v. Cummins*, 662 Fed.Appx. 437, 453 (6th Cir. 2016) ("sexual assault victims can be both male and female").

Second, Plaintiff alleges that Dr. Raimondo depicted a Title IX hearing at Oberlin as focused solely on the reporting student by providing "a safe supportive space for someone to ask, 'What are the harms you experienced and how can we address them so you can continue your education?'" Mot. to Amend, at 5 (quoting Am. Compl. ¶ 57). Yet, in the next breath, Dr. Raimondo explained that Oberlin's disciplinary process is designed to assist all students involved in the process, including determining whether the responding student in fact caused any harm:

> And for the student who is accused, the question is also important and needs to be met I think equally with respect and dignity, but my question for that student is: What, if anything in your conduct, are you willing to be accountable for and how can you be responsible for the harm you've done to others, if in fact that was the result of your conduct? Hearings are a tool or a technique for answering those big questions.[4]

Dr. Raimondo's remarks demonstrate that, far from raising an inference that Plaintiff's disciplinary process was infused with gender bias, Oberlin is committed to using that process to determine what occurred in the context of a given misconduct complaint so that the interests of both the reporting and responding students can be protected.

Finally, Plaintiff argues that Dr. Raimondo's "statements at the ACS panel on June 13, 2015, directly reveal the role that gender bias played in her enforcement of Title IX at Oberlin, especially in 'grey area' cases, which is exactly what Ms. Roe alleged hers to be (until the hearing) and exactly what the hearing panel concluded it was." Mot. to Amend, at 7; Am.

---

[3] American Constitutional Society, "Sex, Lies and Justice: A Discussion of Campus Sexual Assault, Title IX Compliance, and Due Process," June 23, 2015, *available at* https://www.youtube.com/watch?v=EbmfXvd_6gw&t=2679s (33:38 of 1:36:45) (last visited February 19, 2018).
[4] *Id.* (29:55 of 1:36:45).

6

Compl. ¶ 59.  Plaintiff thus hangs his hopes of saving his Title IX claim by alleging that since he

does not self-identify as a sexual "predator," and since Ms. Roe was not "fundamentally

unconscious" during their sexual encounter, that his case fell into a "grey area" so that Oberlin's

adjudication of his disciplinary process was "infused with gender bias."  Am. Compl. ¶ 59.

Plaintiff does not explain what he means by the term "predator," as coined by another member of

the ACS Panel.  *Id.*  Even so, it defies credulity that Oberlin—or any college or university—runs

afoul of Title IX any time it finds a student responsible for committing sexual assault when the

alleged victim is not "fundamentally unconscious" (i.e., comatose) or the responding party is not

deemed a sexual "predator."  Neither Title IX nor the preponderance of the evidence standard,

which the Department of Education mandated Oberlin apply in disciplinary hearings, support

such a result.  *See* Oberlin Br. at 17 n.12 (DE 10-1).

> **B.**      **Plaintiff's Motion to Amend Continues to Reveal a Misunderstanding of How Oberlin's Title IX Disciplinary Process Operates, Including in His Case.**

Plaintiff continues to show that he misunderstands how the Title IX disciplinary process

at Oberlin works, including the role that Dr. Raimondo had in the adjudication of the complaint

Ms. Roe brought against him.  Under Oberlin's Sexual Misconduct Policy (the "Policy"), a

misconduct complaint is reviewed by the Title IX team which may include, as appropriate, "the

Title IX Coordinator, a designee from the Dean of Students, a designee from the Dean of the

College or the Dean of the Conservatory, the Manager of Employee and Labor Relations, and the

Director of Safety and Security."  Policy at 5 (DE 10-2); *see also* Compl. ¶ 24.  Dr. Raimondo

was not "*the* architect" of the Policy, which was developed by a committee in conjunction with

outside legal experts.  *See* Compl. ¶ 11.  Nor did she investigate Ms. Roe's allegations.  Joshua

D. Nolan, the outside neutral legal investigator, did.  *Id.* ¶ 75.  In addition, Dr. Raimondo was not

a member of the Hearing Panel that found Plaintiff responsible for sexual misconduct.

Plaintiff concedes that his proposed Amended Complaint contains only a few new allegations that he believes support a Title IX claim but asserts that the proposed pleading "contains no new *arguments*." Pl.'s Mot. to Amend, at 10. Yet, Plaintiff includes the unsupported conclusory statement that "[i]n practice, the hearing system of which Raimondo was an architect and its chief implementer operates with a predetermined and unwavering assumption that female accusers have experienced violence, an assumption that cannot be dislodged regardless of the facts presented." Am. Compl. ¶ 68. "Legal conclusions cloaked as fact" are insufficient to survive a motion to dismiss. *Haddad v. Randall S. Miller Assocs., PC*, 587 Fed.Appx. 959, 962 (6th Cir. 2014). Plaintiff does not explain, nor can he, how Oberlin's Title IX disciplinary process, a system that requires input and participation from a cross-section of Oberlin employees, Compl. ¶ 24, could be interpreted as being infused with gender bias.

Plaintiff also reiterates his allegation that Oberlin's Title IX process was motivated by gender bias because Dr. Raimondo purportedly stated that it is a "survivor-centered process" that she came to "as a feminist." Pl.'s Mot. to Amend, at 11; Compl. ¶¶ 11, 55, 208. The Sixth Circuit earlier this month rejected the argument that labeling someone involved in the disciplinary process as a "feminist" enables a Title IX claim to survive a motion to dismiss, but instead concluded that "[m]erely being a feminist, being affiliated with a gender-studies program, or researching sexual assault does not support a reasonable inference than [*sic*] an individual is biased again men." *See Miami*, 2018 WL 797451, at *9 n.6. Plaintiff's proposed Amended Complaint, just as his initial Complaint, fails to state a Title IX claim against Oberlin so that permitting amendment would be futile. *Riverview Health Inst. LLC*, 601 F.3d at 520; *Beydoun*, 871 F.3d at 469. The Motion to Amend should be denied.

Also, because Oberlin cannot file a sur-reply as a matter of right, Oberlin will proactively disavow the Court of Plaintiff's false statement in his Notice of Supplemental Authority that Oberlin has a "100% conviction rate" in regard to sexual misconduct complaints.  Pl.'s Notice, at 1 (DE 22); *see also* Compl. ¶ 54.  In reality, as shown in the campus report that Plaintiff cites in his Complaint, Oberlin employs a strict vetting process for such complaints so that, out of "over 100 reports of potential sex-based discrimination and harassment" received during the 2015-16 academic year, approximately 1 out of 10 complaints—or 10 percent—resulted in a finding of responsibility.  Oberlin Spring 2016 Campus Climate Report, at 5-6 (DE 10-3); Oberlin Br. at 12 n.6 (DE 10-1).  Plaintiff is simply wrong when he says otherwise.

## II.  Plaintiff Has Unduly Delayed in Bringing the Proposed New Allegations before the Court and Permitting Leave will Prejudice Oberlin.

In addition to being futile, Plaintiff's Motion to Amend should also be denied because he could have discovered the YouTube video of the ACS Panel, which has been publicly available since June 23, 2015, before he filed this lawsuit.  Plaintiff does not explain why he failed to uncover it earlier.  Instead, his counsel, Christopher Muha, only says in a declaration that he "became aware" of the video on January 10, 2018.  Decl. of Christopher C. Muha, ¶ 1 (DE 21-4). Plaintiff claims he has not unduly delayed in seeking leave to amend because he did so within a few weeks of learning of the YouTube video, but when the information to be included in an amended complaint has been available to the plaintiff prior to filing suit, courts deny leave to amend.  *See e.g.*, *Kanter v. Barella*, 489 F.3d 170, 181 n.14 (3d Cir. 2007) (affirming denial of leave to amend complaint where facts underlying proposed new allegations were publicly available prior to filing of initial complaint); *Groth v. Orkin Exterminating Co., Inc.*, 909 F.Supp. 1143, 1148 (C.D. Ill. 1995) (denying leave to amend where alleged "new" facts were those that plaintiff knew or should have known earlier); *Reyes-Aguilar v. Bank of Am., N.A.*, No. 13-cv-

9

05764, 2014 WL 2917049, at *14 (N.D. Cal. June 24, 2014); *see also Las Vegas Ice and Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."); *Lochridge v. City of Tacoma*, 315 F.R.D. 596, 600 (W.D. Wash. 2014).  The Court should not indulge Plaintiff's delay.

In addition, Oberlin should not be forced to expend additional resources to defend itself against Plaintiff's spurious allegations of gender bias by reworking and resubmitting its motion to dismiss briefing.  As set forth above, while Oberlin objects to Plaintiff's amendment as it relates to his Title IX claim, Oberlin does not object to Plaintiff having dismissed his claims of negligent infliction of emotional distress and breach of the covenant of good faith and fair dealing with prejudice.  Pl.'s Mot. to Amend, at 9-10.

## CONCLUSION

For the reasons set forth herein, Oberlin respectfully requests that the Court deny Plaintiff's Motion for Leave to File Amended Complaint.


Dated:  February 21, 2018                          Respectfully submitted,

                                                    */s/ David H. Wallace*
                                                   David H. Wallace (0037210)
                                                   dwallace@taftlaw.com
                                                   Cary M. Snyder (0096517)
                                                   csnyder@taftlaw.com
                                                   Taft Stettinius & Hollister LLP
                                                   200 Public Square, Suite 3500
                                                   Cleveland, Ohio 44114-2302
                                                   Telephone: 216.241.2838
                                                   Fax: 216.241.3707

                                                   *Attorneys for Defendant Oberlin College*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2018, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ David H. Wallace*
 David H. Wallace
*Attorney for Defendant Oberlin College*

22050327