## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO. 1:17-cv-01335** |
| | ) | |
| **v.** | ) | **Judge Solomon Oliver, Jr.** |
| | ) | |
| **OBERLIN COLLEGE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT OBERLIN COLLEGE'S MEMORANDUM OF LAW
## <u>IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES ............................................................................................... iv

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................... 1

FACTUAL ALLEGATIONS ........................................................................................... 1

I.    Oberlin's Sexual Misconduct Policy and Student Discipline Process. ............... 1

II.   Plaintiff's Disciplinary Matter. .......................................................................... 4

RELEVANT PROCEDURAL HISTORY ...................................................................... 5

LEGAL STANDARD ..................................................................................................... 6

LAW AND ARGUMENT ............................................................................................... 6

I.    Plaintiff's Title IX Claim (Count II) Should Be Dismissed For Failure to State a Claim Upon Which Relief Can Be Granted. ............................................................................. 7

    A.    The Policy is Gender-Neutral and Prohibits Sex-Based Discrimination. ................. 8

    B.    Dr. Raimondo's Alleged Statements Do Not Reveal *Any* Connection Between Oberlin Finding Plaintiff Responsible for Sexual Assault and Gender Bias. ........... 9

    C.    Plaintiff Does Not Allege Facts that Create an Inference that His Discipline was Part of a 'Pattern of Decision-making' of Gender Bias. .......................................... 12

    D.    Plaintiff's Conclusory Allegations that Oberlin Found Him Responsible for Sexual Assault as a Result of Public Pressure Likewise Fail to State a Claim.................... 13

II.   Plaintiff's Breach of Contract Claim Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted (Count I)................................................................. 15

    A.    Oberlin Followed Its Policy in Concluding that Jane Roe Did Not Provide Effective Consent for the Entirety of the Sexual Encounter. .................................................. 16

    B.    Oberlin Followed Its Policy in Applying the Preponderance of the Evidence Standard. .................................................................................................................... 17

    C.    Oberlin Followed Its Policy By Explaining the Panel's Rationale in Writing for Finding Plaintiff Responsible for Sexual Misconduct. ........................................... 18

    D.    Oberlin Did Not Violate the Covenant of Good Faith and Fair Dealing or the Policy by Denying Plaintiff's Appeal and Upholding His Expulsion. .............................. 19

III.  Plaintiff's Amended Complaint Fails to State a Claim for Negligence (Count III). ........ 19

CONCLUSION ................................................................................................................. 20

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 6, 8

*Bailey v. City of Ann Arbor*, 860 F.3d 382 (6th Cir. 2017) ............................................... 9

*Bassett v. Natl. Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) ....................... 2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 6, 8

*Buescher v. Baldwin Wallace Univ.*, No. 13-cv-2821, 2014 WL 1910907
    (N.D. Ohio May 12, 2014) ......................................................................................... 20

*Davis v. Monroe Cty. BOE*, 526 U.S. 629 (1999) ........................................................ 1, 6

*Doe v. Case Western Reserve Univ.*, No. 14CV2044, 2015 WL 5522001,
    at *6 (N.D. Ohio Sept. 16, 2015) ...................................................................... 8, 12, 15

*Doe v. College of Wooster*, 243 F.Supp.3d 875 (N.D. Ohio 2017) ....................... 1, 14, 20

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) .......................................................... 8

*Doe v. Cummins*, 662 Fed.Appx. 437 (6th Cir. 2016) ................................... 7, 8, 13, 15

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018) ................................................ 8, 9, 14

*Doe v. St. John's Univ.*, No. 17-2413, 2017 WL 4863066 (D. Minn. Oct.
    16, 2017) .................................................................................................................... 10

*Doe v. Univ. of Cincinnati*, 173 F.Supp.3d 586 (S.D. Ohio 2016) ......................... 14, 15

*Doe v. Univ. of Colo., Boulder*, No. 16-cv-1789, 2017 WL 2311209 (D.
    Colo. May 26, 2017) .................................................................................................. 15

*Doe v. Univ. of Dayton*, No. 17-cv-134, 2018 WL 1393894 (S.D. Ohio
    Mar. 20, 2018) ........................................................................................................... 20

*Doe v. Univ. of Massachusetts-Amherst*, No. 14-30143, 2015 WL 4306521
    (D. Mass. July 14, 2015) ............................................................................................ 15

*Doe v. Univ. of the South*, 687 F.Supp.2d 744 (E.D. Tenn. 2009) ............................ 7, 18

*Ellis v. Greater Cleveland R.T.A.*, 25 N.E.3d 503 (Ohio Ct. App. 2014) ..................... 20

*Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005) ........................................... 18

*Gomes v. Univ. of Maine Sys.*, 365 F.Supp.2d 6 (D. Maine 2005) ................................. 7

*Mallory v. Ohio Univ.*, 76 Fed.Appx. 634 (6th Cir. 2003) ............................... 12, 13, 15

*McDade v. Cleveland State Univ.*, No. 14AP-275, 2014 WL 4557015
    (Ohio App. Sept. 16, 2014) ....................................................................................... 16

*Pierre v. Univ. of Dayton*, 143 F.Supp.3d 703 (S.D. Ohio 2015) ............................ 17, 18

*Pierre v. Univ. of Dayton*, No. 15-cv-362, 2017 WL 1134510 (S.D. Ohio
    Mar. 27, 2017) ............................................................................................... 10, 13, 17

*Ray v. Wilmington Coll.*, 667 N.E.2d 39 (Ohio App. 1995) ................................... 15, 19

*Sahm v. Miami Univ.*, 110 F.Supp.3d 774 (S.D. Ohio 2015) ....................................... 13

*Valente v. Univ. of Dayton*, 438 Fed.Appx. 381 (6th Cir. 2011) ........................ 15, 16, 19, 20

*Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705 (6th Cir. 1981) ............................................... 20

*Wood v. Strickland*, 420 U.S. 308 (1975) ...................................................................... 6

*Yu v. Vassar College*, 97 F.Supp.3d 448 (S.D.N.Y. 2015) ............................................ 7

### <u>Statutes</u>

Title IX, 20 U.S.C. § 1681 ................................................................................... passim

**Rules**

Federal Civil Rule 12(b)(6).............................................................................................. 6

**Other Authorities**

Russlynn Ali, Dear Colleague Letter, U.S. Dept. of Educ. (Apr. 4, 2011)................................... 17

## STATEMENT OF ISSUES

   I.     Does Plaintiff John Doe state a claim for a violation of Title IX, 20 U.S.C. § 1681, when Plaintiff does not allege facts that demonstrate Defendant Oberlin College ("Oberlin") was motivated by sex-based discrimination when administering its sexual misconduct policy?

   II.    Does Plaintiff state a claim for breach of contract against Oberlin for expelling Plaintiff after he was found to be responsible for committing sexual assault in accordance with Oberlin's sexual misconduct policy when Oberlin fairly administered its policy?

   III.   Does Plaintiff state a claim for negligence when Oberlin's only duties to Plaintiff are set forth in its written policies and sound in contract?

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

After an extensive investigation and a full hearing, Defendant Oberlin College ("Oberlin") found that Plaintiff John Doe ("Plaintiff") sexually assaulted Jane Roe ("Ms. Roe") in the early morning hours of February 28, 2016, in violation of Oberlin's Sexual Misconduct Policy (the "Policy").  Oberlin expelled Plaintiff due to his misconduct.

Now, Plaintiff attempts to improperly litigate the disciplinary findings against him by alleging that Oberlin violated Title IX, 20 U.S.C. § 1681, and various Ohio laws.  As a general rule, "'courts should refrain from second-guessing the disciplinary decisions made by school administrators.'"  *Doe v. College of Wooster*, 243 F.Supp.3d 875, 885 (N.D. Ohio 2017) (quoting *Davis v. Monroe Cty. BOE*, 526 U.S. 629, 648 (1999)).  Accordingly, courts, including those in this District, consistently dismiss similar Title IX lawsuits based solely on the Plaintiff's disappointment with the outcome of a fairly administered disciplinary process.  Moreover, Plaintiff's state law claims fail as a matter of law.

Plaintiff's Title IX claim (Count II) fails because Plaintiff has not alleged facts that show sex-based discrimination motivated Oberlin's investigation and adjudication of the sexual assault allegations against him.  Plaintiff's breach of contract claim (Count I) fails because Oberlin followed the procedures in its Policy.  Also, where a contract governs the relationship between a student and college, a student may not bring a claim for negligence (Count III).  For all of these reasons, and as described in more detail below, the Court should grant Oberlin's motion and dismiss Plaintiff's Amended Complaint with prejudice.

## FACTUAL ALLEGATIONS

**I.**  **Oberlin's Sexual Misconduct Policy and Student Discipline Process.**

Since its founding in 1833, Oberlin, a private college, has established itself as a

progressive leader in promoting equity and social justice.[1]  Oberlin's Policy can be found on its

website.[2]  At the beginning of the Policy, Oberlin affirms its commitment to ensuring "an

equitable and inclusive campus free of violence, harassment, and discrimination," and includes

its Statement of Non-Discrimination as a foundational framework for the Policy.  Policy, at 7, 9-

10.  The Policy establishes Oberlin's standards for acceptable student conduct and sets forth the

procedures by which Oberlin would investigate and adjudicate alleged violations of sexual

misconduct.  Am. Compl. at ¶ 15 (Dkt. 21-2).  The Policy prohibits certain conduct by students,

including "Sexual Assault," which the Policy defines as "'[h]aving or attempting to have

intercourse or sexual contact with another individual without consent.'"  *Id.* at ¶ 19 (quoting the

Policy, at 17).  The Policy makes clear that "[i]t is the responsibility of both parties who engage

in sexual activity to ensure that effective consent is obtained for each sexual act and over the

entire course of each sexual encounter."  Policy, at 19.  Effective consent is not possible when a

party to the encounter is incapacitated.  *Id.* at 20.

When a report of sexual misconduct is made, Oberlin's Title IX team conducts an initial

assessment of the report.  *Id.* at 34-35.  The Title IX team determines the appropriate manner of

resolution, and may refer the report for informal resolution or for further investigation and

formal resolution.  *Id.* at 35; *see also id.* at 64.

The Title IX coordinator, in consultation with the Title IX team, oversees any such

investigation.  *Id.* at 36.  Upon receipt of an investigator's report, the Hearing Coordinator, in

---

[1] While Oberlin strongly disagrees with many of the facts asserted by Plaintiff in his Amended Complaint, for purposes of this Motion only, Oberlin accepts the truth of Plaintiff's well-pleaded allegations.

[2] *See* https://new.oberlin.edu/office/equity-diversity-inclusion/policies/sexual_misconduct_policy.pdf.  A copy of the Policy is attached hereto at Exhibit A.  Given that Plaintiff refers to the Policy in his Amended Complaint, *see e.g.* Am. Compl. at ¶¶ 6, 15-34, 37-40, 179-201, and the Policy is central to Plaintiff's claims, the Court may consider the Policy in resolving Oberlin's motion to dismiss.  *Bassett v. Natl. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

consultation with the Title IX team, makes a threshold determination "as to whether there is sufficient factual information upon which a [Hearing Panel] *could* find a violation" of the Policy. *Id.* at 37 (emphasis added).  If this threshold is met, the matter may be sent to a Hearing Panel for resolution.  *Id.* at 37-39.

The Hearing Panel consists of three specially trained administrators who receive annual training on topics that include, among other areas: non-discrimination; factors relevant to a determination of witness credibility; the evaluation of consent and incapacitation; the application of the preponderance of the evidence standard; and the imposition of sanctions in response to a finding of sexual misconduct.  *Id.* at 39.   The Hearing Panel "will make factual findings, determine whether College policy was violated, and recommend appropriate sanctions and remedies."  *Id.* at 44.  The Hearing Panel determines the Responding Party's responsibility by a preponderance of the evidence, which means it is "'more likely than not' . . . that the Responding Party is responsible for the alleged violation," as required by guidance issued by the Department of Education's Office of Civil Rights ("DOE") in 2011.  *Id.* at 46.

If the Hearing Panel makes a finding of responsibility by majority vote, it recommends sanctions to the Hearing Coordinator who, in consultation with the Title IX Coordinator, reviews them for fairness and consistency, and imposes an appropriate sanction.  *Id.*  The outcome of the hearing is provided in writing to both the Reporting Party and Responding Party.  *Id.* at 48.  A student who is found responsible for sexual misconduct may appeal the Hearing Panel's finding to the Dean of Students (or his/her designee), limited to three bases: (1) the finding was the result of procedural or substantive error that significantly affected the outcome; (2) there is new evidence that was previously unavailable, despite the reasonable efforts of the party, that could substantially impact the finding; or (3) the sanction imposed was significantly disproportionate to

3

the violation. *Id.* at 48-49. The appeals officer provides a written decision on the appeal, which is final, to both the Reporting Party and Responding Party. *Id.* at 49.

## II.    <u>Plaintiff's Disciplinary Matter</u>.

Plaintiff was expelled as a student from Oberlin on October 11, 2016, after a Hearing Panel found him responsible for committing sexual assault on another student. Am. Compl. at ¶¶ 1, 6, 153-163. The disciplinary matter at issue began as a result of an encounter between Plaintiff and Jane Roe in Plaintiff's residence hall during the early morning hours of February 28, 2016. *Id.* at ¶¶ 71-78. On March 9, 2016, Ms. Roe reported to Dr. Meredith Raimondo, Oberlin's Title IX coordinator at the time, that Plaintiff had sexually assaulted her. *Id.* at ¶¶ 38, 79. On March 16, 2016, Dr. Raimondo emailed Plaintiff, notifying him that Oberlin was investigating a report that he sexually assaulted Jane Roe "while she was incapacitated due to alcohol and unable to consent to sexual activity." *Id.* at ¶ 79. On March 18, 2016, Dr. Raimondo appointed Joshua D. Nolan to investigate Ms. Roe's allegations. *Id.* at ¶ 80. In addition to Dr. Raimondo, Mr. Nolan interviewed 10 people with knowledge of the events surrounding the sexual encounter between Plaintiff and Ms. Roe. *Id.* at ¶ 84. On July 7, 2016, Mr. Nolan issued a report that summarized the results of his investigation. *Id.* at ¶ 83.

On October 5, 2016, Oberlin convened a hearing to weigh the charges against Plaintiff. *Id.* at ¶ 122. A few days earlier, Plaintiff selected Assistant Dean Adrian Bautista to serve as his advisor during the hearing. *Id.* at ¶¶ 123-124; Policy, at 33.[3] At the hearing, Ms. Roe testified about her level of intoxication during the night and morning at issue due to the amount of alcohol and marijuana she consumed. *Id.* at ¶ 129. She testified that during the sexual encounter, Plaintiff grabbed her neck and forced her mouth onto his penis after he stopped having vaginal intercourse with her. *Id.* at ¶ 126. Ms. Roe went on to testify that she physically resisted

[3] Under the Policy, the parties select an advisor of their choice. Policy, at 33.

Plaintiff's efforts to force her to perform oral sex. *Id.* at ¶ 127. When asked to explain how Plaintiff should have known that she was intoxicated during this encounter, Ms. Roe responded: "Um, I made the statement, 'I am not sober right now.' When I was in his room. And I said, 'I don't feel very sober right now.' And that was when I was laying on my back." *Id.* at ¶ 129. Ms. Roe's friends corroborated her intoxicated state around the time of the sexual encounter in testimony before the Hearing Panel. *Id.* ¶¶ 139, 158.

On October 11, 2016, Oberlin notified Plaintiff and Ms. Roe in writing that Plaintiff had been found responsible for misconduct because "the preponderance of the evidence established that effective consent was not maintained for the entire sexual encounter that occurred on February 28, 2016." *Id.* at ¶ 153. The hearing panel determined that Ms. Roe "was incapacitated and not capable of giving consent when asked to perform oral sex." *Id.* at ¶ 158; *see also id.* ¶¶ 156-157. Oberlin expelled Plaintiff from the college on the same day. *Id.* at ¶¶ 1, 6, 163.

Plaintiff appealed the decision of the hearing panel on October 24, 2016. *Id.* at ¶ 164. In support of his appeal, Plaintiff included statements from two students, J.B. and H.H., and a letter from a physician who discussed subjective and objective indications of intoxication. *Id.* at ¶¶ 168-172. Oberlin denied Plaintiff's appeal on November 21, 2016, and upheld his expulsion. *Id.* at ¶¶ 174-176. Oberlin rejected the testimony from J.B. on the ground that it "did not challenge the factors that led to the determination" that Plaintiff should have known Ms. Roe was incapacitated. *Id.* at ¶ 174. Oberlin rejected the statement of H.H. on the ground that the student could have testified as a witness at the hearing, and also rejected the testimony of the physician on the basis that she "was not there to examine anyone the night of the incident and has never met [Ms. Roe]." *Id.* at ¶¶ 174-175.

## **RELEVANT PROCEDURAL HISTORY**

Plaintiff initiated this litigation on June 23, 2017, by filing a Complaint (Dkt. 1) against

5

Oberlin that alleged violations of Title IX, 20 U.S.C. § 1681, and four claims under Ohio law. Pursuant to Rule 12(b)(6), Oberlin sought to dismiss Plaintiff's Complaint on August 21, 2017, for failing to state a claim under which relief can be granted (Dkt. 10).  Plaintiff opposed Oberlin's Motion to Dismiss (Dkt. 12), and Oberlin filed a reply on October 4, 2017 (Dkt. 13).

On February 7, 2018, Plaintiff filed a Motion for Leave to File an Amended Complaint. (Dkts. 21 & 21-2).  Plaintiff explained that his "sole motivation" in seeking to file the Amended Complaint was to add brief excerpts of statements made by Dr. Raimondo during an American Constitution Society Panel, as captured in a YouTube video posted on June 23, 2015.  Pl.'s Mot. to Amend, at 9 (Dkt. 21-1).  In addition, Plaintiff dismissed his claims for breach of the covenant of good faith and fair dealing and negligent infliction of emotional distress.  *Id.* at 5.  On February 26, 2018, the Court granted Plaintiff leave to file his Amended Complaint (Dkt. 26).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

## LAW AND ARGUMENT

The Supreme Court has cautioned that, when evaluating a Title IX claim, "courts should refrain from second-guessing the disciplinary decisions made by school administrators."  *Monroe Cty. BOE*, 526 U.S. at 648; *see also Wood v. Strickland*, 420 U.S. 308, 326 (1975) (advising that "[i]t is not the role of federal courts to set aside decisions of school administrators").  Plaintiff's Amended Complaint asks the Court to disregard this instruction and re-adjudicate private, internal administrative disciplinary processes, the result with which Plaintiff disagrees.  In short,

Plaintiff wants this Court to act as a policy maker and substitute its judgment for that of Oberlin. Courts, including those in this District, consistently refuse to assume this role.  This Court should do the same and dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

**I.** **Plaintiff's Title IX Claim (Count II) Should Be Dismissed For Failure to State a Claim Upon Which Relief Can Be Granted.**

Title IX prohibits Oberlin from discriminating "on the basis of sex."  20 U.S.C. § 1681(a).  Plaintiff's Amended Complaint describes *his* version of the events that took place between him and Jane Roe.  However, this Court's review of Plaintiff's claims is "substantially circumscribed; the law does not allow this Court to retry the [College's] disciplinary proceeding."  *Doe v. Univ. of the South*, 687 F.Supp.2d 744, 755 (E.D. Tenn. 2009) (quoting *Gomes v. Univ. of Maine Sys.*, 365 F.Supp.2d 6, 14 (D. Maine 2005)); *see also Yu v. Vassar College*, 97 F.Supp.3d 448, 461 (S.D.N.Y. 2015) ("The Court's role, of course, is neither to advocate for best practices or policies nor to retry disciplinary proceedings.").  This is because, "in a university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias."  *Doe v. Cummins*, 662 Fed.Appx. 437, 450 (6th Cir. 2016) (internal quotation and citation omitted).  In short, the Court is not charged with making "an independent determination as to what happened between the Plaintiff John Doe and [Jane Roe]" during their sexual encounter.  *Univ. of the South*, 687 F.Supp.2d at 755.  Instead, the sole question before the Court is whether Oberlin discriminated against Plaintiff based on his sex when Oberlin expelled him for sexually assaulting another student.

The Sixth Circuit recently affirmed that, in order to state an erroneous-outcome Title IX claim,[4] a plaintiff must allege:  "(1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a *particularized . . . causal*

---

[4] Plaintiff admits that he has only sought to bring an erroneous-outcome Title IX claim.  Pl.'s Opp. at 8 n.5 (Dkt. 12).

connection between the flawed outcome and gender bias." *Doe v. Miami Univ.*, 882 F.3d 579, 592 (6th Cir. 2018) (quoting *Cummins*, 662 Fed.Appx. at 452 (emphasis added)).[5] Allegations that may be sufficient to state a Title IX claim include "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Miami*, 882 F.3d at 593. However, mere "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Cummins*, 662 Fed.Appx. at 452. Rather, "a plaintiff must allege facts sufficient to give rise to an inference that the school intentionally discriminated against plaintiff *because* of his or her sex." *Doe v. Case Western Reserve Univ.*, No. 14CV2044, 2015 WL 5522001, at *6 (N.D. Ohio Sept. 16, 2015) (emphasis in original).

Plaintiff's Amended Complaint fails to satisfy this standard. Instead, Plaintiff merely describes what he believes to be a "flawed disciplinary process," Am. Compl. at Prayer for Relief, ¶ (a), and asks the Court to assume that the outcome must have been caused by sex-based discrimination. But Plaintiff has offered nothing that establishes either the Policy, or the implementation of the Policy in Plaintiff's case, was motivated by sex-based animus toward male students. Therefore, Plaintiff's Title IX claim fails as a matter of law and must be dismissed.

### A.     The Policy is Gender-Neutral and Prohibits Sex-Based Discrimination.

As an initial matter, the Policy on its face is gender-neutral in that it clearly and unambiguously applies to all students regardless of sex. Further, the Policy prohibits sex-based discrimination. Policy, at 9-10.

---

[5] In *Miami*, the Sixth Circuit affirmed that the *Twombly/Iqbal* pleading standard applies to Title IX claims and expressly rejected the lax "minimal plausible inference" standard adopted by the Second Circuit in *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016), which Plaintiff urged this Court to follow in opposing Oberlin's Motion to Dismiss his first Complaint. *See Miami*, 882 F.3d at 588-89; Pl.'s Opp. at 9-12 (Dkt. 12); *see also* Pl.'s Mot. to Amend, at 2, 4 (Dkt. 21-1).

**B.     Dr. Raimondo's Alleged Statements Do Not Reveal *Any* Connection Between Oberlin Finding Plaintiff Responsible for Sexual Assault and Gender Bias.**

Plaintiff has not alleged that any Oberlin officials who found him responsible for sexual assault engaged in sex-based discrimination.  Nor do the allegations regarding Dr. Raimondo—who was not on the Hearing Panel—even if true, establish an erroneous outcome claim.  Plaintiff repeatedly alleges that Dr. Raimondo was motivated "by her views on feminism" in formulating the Policy adopted by Oberlin in May 2014.  Am. Compl. at ¶ 209; *see also id.* ¶¶ 11, 57, 59.  Dr. Raimondo was but one of many committee members who helped draft the Policy with advice from legal counsel and therefore could not have tainted the entire Policy, which is consistent with OCR guidelines then in effect.  *See e.g.*, *id.* ¶¶ 37-38.  Plaintiff has failed to identify any structural deficiencies in the facially neutral Policy that suggests the resolution process unlawfully discriminates against men.  And the Sixth Circuit recently rejected the notion that labeling even a member of the disciplinary hearing panel—of which Dr. Raimondo was not a member—as a "feminist" suffices to state a Title IX claim and survive a motion to dismiss.  Instead, the court concluded that "[m]erely being a feminist . . . does not support a reasonable inference than [*sic*] an individual is biased again men."  *Miami*, 882 F.3d at 593 n.6.

The excerpted comments of Dr. Raimondo that Plaintiff plucks from the June 23, 2015 American Constitution Society panel discussion ("ACS Panel") likewise fail to raise an inference of a *particularized casual connection* between the outcome of his disciplinary proceeding and gender bias.[6]  As an initial matter, Dr. Raimondo's remarks do not reference Plaintiff or his disciplinary proceeding—nor can they.  The ACS Panel occurred more than eight months before the February 28, 2016 incident between Plaintiff and Ms. Roe that led a Hearing Panel to find

_____

[6] The Court may consider all of Dr. Raimondo's comments, and not just the fragments Plaintiff identifies, for purposes of resolving this motion.  *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) (the entirety of a video referenced in plaintiff's complaint may be considered in resolving a motion to dismiss).

9

him responsible for committing sexual assault.  In addition, while Plaintiff identifies that he believes Dr. Raimondo "views sexual misconduct as an offense committed prototypically ***by*** men ***against*** women," Plaintiff shares this view, at least in regard to Oberlin, where he claims that the "vast majority" of sexual misconduct complaints are brought by women against men.  Am. Compl. ¶¶ 55, 57 (emphasis in original).

If Plaintiff is suggesting that his Title IX claim should survive dismissal because more women than men at Oberlin are allegedly victims of sexual assault, courts recognize this disparity and hold that it cannot be the basis for a Title IX claim.  *See e.g.*, *Doe v. St. John's Univ.*, No. 17-2413, 2017 WL 4863066, at *4 (D. Minn. Oct. 16, 2017) (noting that Title IX "enforcement is likely to have a disparate impact on the sexes" and citing statistics from the National Sexual Violence Resource Center that "fewer than one out of every ten sexual assault victims is male"); *Pierre v. Univ. of Dayton*, No. 15-cv-362, 2017 WL 1134510, at *11 (S.D. Ohio Mar. 27, 2017).  Also, immediately following the excerpt cherry-picked by Plaintiff, Dr. Raimondo explained that Title IX procedures should not "assume that women are the only people who report" sexual misconduct claims, which is consistent with Plaintiff's view that both male and female Oberlin students are accused of sexual misconduct.[7]  *See* Am. Compl. ¶ 55.

Plaintiff disingenuously claims that Dr. Raimondo depicted a Title IX hearing at Oberlin as focused solely on the reporting student by providing "a safe supportive space for someone to ask, 'What are the harms you experienced and how can we address them so you can continue your education?'"  *Id.* ¶ 57.  Yet, in the next breath, Dr. Raimondo explained that Oberlin's disciplinary process is designed to assist *all students* involved in the process:

---

[7] American Constitutional Society, "Sex, Lies and Justice: A Discussion of Campus Sexual Assault, Title IX Compliance, and Due Process," June 23, 2015, *available at* https://www.youtube.com/watch?v=EbmfXvd_6gw&t=2679s (33:38 of 1:36:45) (last visited March 23, 2018).

> And for the student who is accused, the question is also important
> and needs to be met I think equally with respect and dignity, but
> my question for that student is: What, if anything in your conduct,
> are you willing to be accountable for and how can you be
> responsible for the harm you've done to others, if in fact that was
> the result of your conduct?  Hearings are a tool or a technique for
> answering those big questions.[8]

Dr. Raimondo's remarks demonstrate that, far from raising an inference that Plaintiff's particular

disciplinary process was infused with gender bias, Oberlin is committed to using that process to

determine what occurred in the context of a given misconduct complaint so that the interests of

both the reporting and responding students can be protected.

Plaintiff also alleges that Dr. Raimondo's remarks on the ACS Panel purport to reveal

that gender bias played a role in Title IX enforcement at Oberlin, especially in "grey areas" or, as

another panelist described, "'the middle category' of cases – 'where we're not talking about

predators … or sex with someone who is fundamentally unconscious[.]'"  Am. Compl. ¶ 59.

Plaintiff thus alleges that since he does not self-identify as a sexual "predator," and since Ms.

Roe was not "fundamentally unconscious" (i.e., comatose) during their sexual encounter, that his

case fell into a "grey area" so that Oberlin's adjudication of his disciplinary process *must* have

been "infused with gender bias."  *Id.*  Plaintiff does not explain what he means by the term

"predator," even so, it defies credulity that Oberlin—or any college or university—runs afoul of

Title IX any time it finds a student responsible for committing sexual assault when the alleged

victim is not "fundamentally unconscious" or the responding party is not deemed a sexual

"predator."  Neither Title IX nor the preponderance of the evidence standard, which the DOE

mandated Oberlin apply in disciplinary hearings, supports such a result.

Further, the Amended Complaint is devoid of any allegation that Dr. Raimondo engaged

---

[8] *Id.* (29:55 of 1:36:45).

in any conduct during Plaintiff's disciplinary process that demonstrates bias against males.

      **C.**    **Plaintiff Does Not Allege Facts that Create an Inference that His Discipline was Part of a 'Pattern of Decision-making' of Gender Bias.**

The Sixth Circuit has noted that "one case by an individual who was subjectively dissatisfied with the result [of a disciplinary proceeding] does not constitute a pattern of decision-making" sufficient to state a Title IX claim. *Mallory v. Ohio Univ.*, 76 Fed.Appx. 634, 640 (6th Cir. 2003); *see also Case Western*, 2015 WL 5522001, at *6. The Amended Complaint is devoid of allegations that create an inference that Oberlin's adjudication of the complaint against Plaintiff was part of a "pattern of decision-making" infused with gender bias.

Plaintiff's allegation that men are disproportionately affected by the Policy because more sexual assault complaints at Oberlin are brought by women does not support a Title IX claim. *See* Am. Compl. ¶¶ 52-55. Plaintiff claims that every respondent subject to Oberlin's formal sexual misconduct resolution process in the Fall of 2015 and at least part of Spring 2016 was found responsible for at least one charge with "[u]pon information and belief, the vast majority" of respondents being men and the "vast majority of their accusers" being women. *Id.* at ¶ 210. But Plaintiff fails to mention that only a small minority of sexual misconduct reports that Oberlin receives proceed to formal process. In fact, Oberlin employs a strict vetting process for misconduct complaints. According to Oberlin's Spring 2016 Campus Climate Report, which Plaintiff relies on in his Complaint, *see* Am. Compl. ¶¶ 52-54, out of "over 100 reports of potential sex-based discrimination and harassment" received during the 2015-16 academic year, approximately 1 out of 10 complaints—or 10 percent—resulted in a finding of responsibility. Oberlin Spring 2016 Campus Climate Report, at 5-6 (attached as Exhibit B). Plaintiff is simply wrong to suggest Oberlin has a 100% conviction rate in regard to all sexual misconduct claims that it receives. Rather, Oberlin's "focus on the ability to consent merely demonstrates [its]

12

policy decision to punish those who engage in sexual conduct with another person when the first person is aware of the other's inability to consent." *Mallory*, 76 Fed.Appx. at 639.

The mere fact that Plaintiff, a male, was accused by a female of sexual misconduct is insufficient to support an assertion that his gender played a role in finding him responsible for that misconduct.  Oberlin is "not responsible for the gender makeup of those who are accused *by other students* of sexual misconduct." *Cummins*, 662 Fed.Appx. at 454 (emphasis in original) (internal quotation and citation omitted); *see also e.g.*, *Pierre*, 2017 WL 1134510, at *11 ("The University has no control over the gender of a student who accuses another student of sexual misconduct, nor over the gender of the student so accused.").

Plaintiff offers no allegations that, if believed, demonstrate Oberlin would have approached the sexual assault report at issue any differently if a female student, rather than Plaintiff, had been accused of misconduct.  *See Sahm v. Miami Univ*, 110 F.Supp.3d 774, 779 (S.D. Ohio 2015) (dismissing Title IX claim because plaintiff did not assert any facts showing that the university would have treated a female accused of sexual assault any differently).

**D.      Plaintiff's Conclusory Allegations that Oberlin Found Him Responsible for Sexual Assault as a Result of Public Pressure Likewise Fail to State a Claim.**

Plaintiff's conclusory argument that Oberlin was under political and public pressure to wrongly find accused male students responsible for sexual misconduct has been repeatedly rejected by the courts.  Plaintiff identifies public criticism levied against Oberlin *and other universities* for the manner in which allegations of sexual assault on campus are investigated and adjudicated.  Am. Compl. ¶¶ 36, 46-49.  In one instance, a female student allegedly complained that Oberlin took too long in adjudicating her sexual misconduct complaint.  *Id.* at ¶ 36.  The same student also apparently complained that Oberlin did not adequately punish the male student

13

by suspending him after he accepted responsibility for engaging in the misconduct.  *Id.*[9]  The Amended Complaint also notes that in November 2015, approximately 18 months after Oberlin adopted its revised Policy, Oberlin learned that it was one of "hundreds" of colleges and universities throughout the nation being investigated by the DOE as to whether its sexual assault disciplinary proceedings comply with Title IX.  *Id.* at ¶¶ 48-49.

These allegations do not support an inference of gender bias.  In *College of Wooster*, the plaintiff alleged that, during the period preceding his disciplinary hearing, the college was subjected to substantial criticism from its students and the media for how it handled complaints of sexual assault.  243 F.Supp.3d at 886.  The court concluded that these comments were "gender neutral" and "[a]t most . . . demonstrate that Wooster has previously been criticized by the press and student body for being biased against alleged victims of sexual assault."  *Id.*  This criticism "does not, however, suggest a basis for discrimination against male students."  *Id.*

Other federal district courts likewise reject the notion that a college discriminates against male students in investigating and adjudicating reports of sexual misconduct in response to pressure from the DOE.  For example, a court in the Southern District of Ohio concluded that "it is not reasonable to infer that [a college] has a practice of railroading students accused of sexual misconduct simply to appease the [DOE] and preserve its federal funding."  *Doe v. Univ. of Cincinnati*, 173 F.Supp.3d 586, 602 (S.D. Ohio 2016).[10]  Moreover, "pressure from the federal government . . . by an investigation directed at the University . . . says nothing about the University's alleged desire to find men responsible because they are men."  *Doe v. Univ. of*

---

[9] Here, Plaintiff did not accept responsibility for misconduct in lieu of proceeding with a hearing.
[10] While the Sixth Circuit in *Miami* acknowledged that the plaintiff alleged the university faced external pressure from the federal government, unlike in *Miami*, Oberlin is not a defendant in another Title IX lawsuit, let alone a matter in which the college is accused of being too lax in disciplining males found responsible for sexual assault.  *See Miami*, 882 F.3d at 594.

14

*Colo., Boulder*, 255 F.Supp.3d 1064, 1078 (D. Colo. 2017).

Finally, Plaintiff's allegations concerning his Hearing Advisor, Associate Dean Bautista, do not save his Title IX claim. Under the Policy, the parties select an advisor of their choice. Policy, at 33. Plaintiff criticizes Mr. Bautista for retweeting a comment from a group called "End Rape on Campus" that stated, "To survivors everywhere, we believe you." Am. Compl. ¶ 62. But this retweet "does not equate to gender bias because sexual-assault victims can be both male and female." *Cummins*, 662 Fed.Appx. at 453. In addition, Mr. Bautista's role was limited to advising Plaintiff; he had no role in the decision-making process or Plaintiff's appeal. *See* Policy, at 33. In short, Plaintiff has not cited to "any comments that targeted him based on his gender—as opposed to his status as a student accused of sexual assault—or any conduct suggestive of gender bias." *Doe v. Univ. of Massachusetts-Amherst*, No. 14-30143, 2015 WL 4306521, at *8 (D. Mass. July 14, 2015).[11]

Plaintiff has not set forth any facts to show a particularized causal connection between the outcome of his disciplinary proceeding and sex-based discrimination. Rather, he merely challenges the outcome of his proceeding, which is insufficient to state a Title IX claim.

## II. Plaintiff's Breach of Contract Claim Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted (Count I).[12]

"[C]ontracts for private education have unique qualities and must be construed to allow the institution's governing body to meet its educational and doctrinal responsibilities." *Valente v. Univ. of Dayton*, 438 Fed.Appx. 381, 384 (6th Cir. 2011) (quoting *Ray v. Wilmington Coll.*,

---

[11] Also, the fact that Mr. Bautista left Plaintiff's hearing early, *see* Am. Compl. ¶ 152, does not establish sex-based discrimination. *See Univ. of Cincinnati*, 173 F.Supp.3d at 595, 608 (dismissing Title IX claim even though plaintiff's advisor left the misconduct hearing early due to a scheduling conflict).

[12] If the Court dismisses Plaintiff's Title IX claim, as it should, the Court can decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims (Counts I and III). *E.g.*, *Mallory*, 76 Fed.Appx. at 641; *Case Western*, 2015 WL 5522001, at *8.

667 N.E.2d 39, 42 (Ohio App. 1995)).  "Courts therefore will not interfere with a private

university's right to make regulations, establish requirements . . . and enforce disciplinary rules

absent '*a clear abuse of discretion*.'"  *Id.* (emphasis in original) (citation omitted).  In

determining whether Oberlin abused its discretion, the issue is not whether Oberlin should have

believed Ms. Roe's or Plaintiff's version of the events, nor whether it strictly adhered to its

procedural rules.  *See Valente*, 438 Fed.Appx. at 385; *McDade v. Cleveland State Univ.*, No.

14AP-275, 2014 WL 4557015, at *4 (Ohio App. Sept. 16, 2014).  Instead, the issue is whether

Oberlin "acted unreasonably, arbitrarily, or unconscionably."  *Valente*, 438 Fed.Appx. at 385.

Plaintiff claims that a contractual relationship existed between him and Oberlin, and that

the Policy was part of that contract.  Am. Compl. ¶¶ 179-180.  In particular, Plaintiff claims

Oberlin breached its contract with him in three ways: (1) failing to apply the Policy's definition

of "incapacitation" in finding him responsible for sexual assault, *id.* ¶¶ 181-186; (2) failing to

apply the preponderance of the evidence standard, *id.* ¶¶ 187-191; and (3) failing to explain the

Panel's rationale for finding him responsible for sexual assault, *id*. ¶¶ 192-194.  In addition,

Plaintiff claims that Oberlin violated the covenant of good faith and fair dealing inherent in the

Policy by upholding his expulsion on appeal.  *Id.* ¶¶ 195-203.  Oberlin abided by its Policy and

did not abuse its discretion in finding Plaintiff responsible for sexual misconduct or upholding

his expulsion on appeal.  The Policy does not guarantee a particular outcome, but rather sets

guidelines for conduct and procedures for investigating alleged violations.  The fact that Plaintiff

disagrees with the outcome cannot in and of itself be grounds for a breach of contract claim.

Accordingly, Plaintiff has failed to state a claim for breach of contract as a matter of law.

### A.     Oberlin Followed Its Policy in Concluding that Jane Roe Did Not Provide Effective Consent for the Entirety of the Sexual Encounter.

Oberlin's Policy provides that incapacitation is one of many barriers that prohibits an

individual from effectively consenting to sexual activity. Policy at 20. The Policy defines incapacitation as a state "where an individual cannot make an informed and rational decision" or is "physically helpless." *Id.*; Am. Compl. at ¶ 181. The Policy notes that the "impact of alcohol and drugs varies from person to person" and "can have a cumulative effect over time [so that] a person who may not have been incapacitated at the beginning of sexual activity may become incapacitated and therefore unable to give effective consent as the sexual activity continues." Policy at 20-21.[13]

At the hearing, Ms. Roe testified to the amount of drugs and alcohol she consumed prior to the sexual encounter with Plaintiff, as well as that she told Plaintiff during the encounter, "I am not sober right now." Am. Compl. ¶ 129. Ms. Roe also testified that she physically resisted Plaintiff's efforts to force her to perform oral sex. *Id.* ¶¶ 126-127. The Hearing Panel found that Ms. Roe "was incapacitated and not capable of giving effective consent when asked to perform oral sex." *Id.* ¶ 157; *see also id.* ¶ 156. In doing so, Oberlin did not clearly abuse its discretion, nor did it act unreasonably, arbitrarily, or unconscionably. Rather, Oberlin "adhered to its misconduct procedure." *Pierre v. Univ. of Dayton*, 143 F.Supp.3d 703, 713 (S.D. Ohio 2015).

### B.   Oberlin Followed Its Policy in Applying the Preponderance of the Evidence Standard.

Plaintiff claims that Oberlin failed to apply the preponderance of the evidence standard because the Hearing Panel did not have sufficient evidence to find him responsible for sexual assault. *See e.g.*, Am. Compl. ¶ 187.[14] To find a student responsible under the preponderance of the evidence standard, the Hearing Panel needed to decide only whether it is "more likely than

---

[13] Plaintiff omitted this portion of the Policy's definition of "incapacitation" from his Amended Complaint. *See* Am. Compl. ¶¶ 181-186.

[14] Notably, the DOE mandated that colleges use the preponderance of the evidence standard of proof in disciplinary proceedings for alleged sexual misconduct. *Pierre*, 2017 WL 1134510, at *8 (citing Russlynn Ali, Dear Colleague Letter, U.S. Dept. of Educ. at 11 (Apr. 4, 2011), *available at* https://www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html.)

not" that Plaintiff was "responsible for the alleged violation."  Policy, at 46.

As an initial matter, "[a] university is not a court of law, and it is neither practical nor desirable it be one."  *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 n.1 (6th Cir. 2005) (citation omitted).  The Hearing Panel, however, has discretion to assess the credibility of the evidence and witnesses, including whether Ms. Roe was incapacitated at the time of the alleged assault. *See Univ. of Dayton*, 143 F. Supp. 3d at 713 ("[T]he issue before this Court is not whether the [hearing board] should have a believed a certain party's version of events. Rather, the issue whether the University abused its discretion[.]"); *Univ. of the South*, 687 F.Supp.2d at 755 (courts should not review "whether a sexual assault occurred, whether any such acts were consensual, or who, as between John Doe and the Complainant is credible").

Even Plaintiff's one-sided account of Oberlin's investigation and adjudication of Ms. Roe's sexual misconduct report identifies a host of evidence from which the Hearing Panel could—and *did*—conclude that it is "more likely than not" that Plaintiff violated the Policy.  *See e.g.*, Am. Compl. ¶¶ 126-129.  In particular, Ms. Roe testified at the hearing that she told Plaintiff during their sexual encounter, "I am not sober right now[,]" and that she physically resisted Plaintiff's efforts to force her to perform oral sex on him, including by grabbing her neck.  *Id.*  Plaintiff has not shown how, when faced with this evidence, Oberlin abused its discretion in applying the preponderance of the evidence standard, as set forth in its Policy and mandated by the DOE.

C.  **Oberlin Followed Its Policy By Explaining the Panel's Rationale in Writing for Finding Plaintiff Responsible for Sexual Misconduct.**

The Policy dictates that the outcome of a sexual misconduct disciplinary hearing will be communicated in writing to the Reporting and Responding parties.  Policy, at 48.  Oberlin did so. On October 11, 2016, Oberlin issued a decision letter to Plaintiff and Ms. Roe in which it found

Plaintiff responsible for sexual misconduct because "the preponderance of the evidence established that effective consent was not maintained for the entire sexual encounter that occurred on February 28, 2016."  Am. Compl. ¶ 153.  This letter, according to Plaintiff, went on to explain that, after Ms. Roe told Plaintiff she was "not sober," Ms. Roe "was incapacitated and not capable of giving effective consent when asked to perform oral sex."  *Id.* ¶¶ 156-157.

### D.  Oberlin Did Not Violate the Covenant of Good Faith and Fair Dealing or the Policy by Denying Plaintiff's Appeal and Upholding His Expulsion.

Plaintiff's Amended Complaint does not allege or otherwise explain how Oberlin *clearly abused its discretion* by denying his appeal and upholding his expulsion, which is required to plead a breach of contract claim.  *See e.g.*, *Valente*, 438 Fed.Appx. at 384; Am. Compl. ¶¶ 173, 196-201.  Instead, Plaintiff complains that Oberlin upheld his expulsion on the basis that the punishment "fit[] within the range specified in the Policy" and argues that, so long as an original sanction falls within that range, an appeal would be meaningless.  Am. Compl. ¶¶ 199-200.

Plaintiff ignores that he had the burden of proof on appeal "as the original determination and sanction are presumed to have been decided reasonably and appropriately."  Policy at 49.  If Plaintiff believes he was owed a more detailed written explanation than he received on appeal, Am. Compl. ¶¶ 174-176, he points to no provision of the Policy that required Oberlin to provide detailed findings.  *See* Policy at 49 (requiring the Appeals Officer to issue a written decision in what is "not intended to be full rehearing").  Nor does Plaintiff plead facts to show that Oberlin's decision to uphold his expulsion was "arbitrary, capricious, or unreasonable."  *Wilmington Coll.*, 667 N.E.2d at 40.  Plaintiff's Amended Complaint fails to state a breach of contract claim, including on the basis that Oberlin violated the duty of good faith and fair dealing.

## III.  Plaintiff's Amended Complaint Fails to State a Claim for Negligence (Count III).

Plaintiff's negligence claim is premised on the same allegations that support Plaintiff's

breach of contract claim—that Oberlin failed to follow the Policy. *Compare* Am. Compl. ¶ 222 *with* ¶¶ 179-181, 187, 192-194. In fact, Plaintiff's *entire* Amended Complaint, not just his negligence claim, is centered on Oberlin's conduct in adjudicating the sexual assault claim against him, including on appeal, conduct that Plaintiff claims is governed by contract law. *Id.* ¶ 179. Ohio law does not recognize a negligence claim against a college or university in the context of student disciplinary proceedings when, as here, a "contract governs the relationship between the parties" and the "duties [Plaintiff] identifies all arise from his contractual relationship with [Oberlin.]" *Valente*, 438 Fed.Appx. at 387; *College of Wooster*, 243 F.Supp.3d at 895; *see also e.g.*, *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981) ("[U]nder Ohio law the existence of a contract action generally excludes the opportunity to present the same case as a tort claim."). Plaintiff has no cause of action in tort for the same alleged conduct as his legally deficient breach of contract claim. *See supra* Sec. II.

Furthermore, Plaintiff's claim for negligence within the college setting "is essentially one for educational malpractice which is not recognized in Ohio." *Doe v. Univ. of Dayton*, No. 17-cv-134, 2018 WL 1393894, at *12 (S.D. Ohio Mar. 20, 2018) (internal quotation and citations omitted); *see also e.g.*, *Buescher v. Baldwin Wallace Univ.*, No. 13-cv-2821, 2014 WL 1910907, at *4 (N.D. Ohio May 12, 2014). Given that Ohio courts do not recognize a cause of action for educational malpractice, Plaintiff's negligence claim fails as a matter of law.[15]

## CONCLUSION

For the reasons set forth herein, Oberlin requests that this Court dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

---

[15] Even if Ohio law recognized such a claim, Plaintiff has failed to properly plead the elements of a negligence claim. *See Ellis v. Greater Cleveland R.T.A.*, 25 N.E.3d 503, 507 (Ohio Ct. App. 2014) ("To establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulted therefrom.").

Dated:  March 23, 2018                        Respectfully submitted,

                                    */s/ David H. Wallace*
                                    David H. Wallace (0037210)
                                    dwallace@taftlaw.com
                                    Cary M. Snyder (0096517)
                                    csnyder@taftlaw.com
                                    Taft Stettinius & Hollister LLP
                                    200 Public Square, Suite 3500
                                    Cleveland, Ohio 44114-2302
                                    Telephone: 216.241.2838
                                    Fax: 216.241.3707

                                    *Attorneys for Defendant Oberlin College*