UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | Case No.: 1:17 CV 1335 |
| Plaintiff | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| OBERLIN COLLEGE, | ) | |
| Defendant | ) | ORDER |

Currently pending before the court is Defendant Oberlin College's ("Oberlin" or "College") Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss," ECF No. 28). For the following reasons, the court grants Defendant's Motion to Dismiss.

## I. BACKGROUND

Plaintiff John Doe ("Plaintiff") initiated the present action on June 23, 2017, and later moved to amend the complaint (ECF No. 21) on February 7, 2018, alleging the following claims: (1) breach of contract, (2) gender-based discrimination in violation of 20 U.S.C. § 1681 ("Title IX"), and (3) negligence. The court granted Plaintiff's Motion to Amend the Complaint on February 26, 2018. (Order of Feb. 26, 2018, ECF No. 26.) Plaintiff is a resident of the District of Columbia and who attended Oberlin College starting in August, 2014. (Amend. Compl. at ¶ 1, ECF No. 21.) Oberlin College is a domestic corporation incorporated in 1834 with its principal place of business in Oberlin, Ohio. (*Id*. at ¶ 2.) It is located in this District.

### A. Factual Allegations

On February 28, 2016, Plaintiff and Jane Roe ("Jane") had a sexual encounter. (*Id*. at ¶ 69.) Earlier that night, Jane drank alcohol and smoked marijuana in several different locations on campus. (*Id*. at ¶ 71.) After arriving at Plaintiff's room, the two talked, kissed, and had vaginal sex. (*Id*. at ¶

75.) During intercourse, Jane complained that the sex was uncomfortable for her, and that she was dry "down there." (*Id*. at ¶ 77.) Jane then commented, "I'm not sober." (*Id*.) Consequently, the two stopped having intercourse. Plaintiff claims that he asked Jane to perform oral sex, and that she did so willingly. (*Id*. at ¶ 78.) However, Jane testified that she physically resisted Plaintiff's attempts to force her to perform oral sex. (*Id*. at ¶ 127.) After Plaintiff ejaculated, Jane got dressed and left the room. (*Id*. at ¶ 78.)

On March 9, 2016, Jane filed a report with Dr. Meredith Raimondo, now Vice President and Dean of Students and former Title IX Coordinator, accusing Plaintiff of sexual assault. (*Id.* at ¶ 79.) On March 16, 2016, Plaintiff was notified of the allegations and an investigation was conducted by Joshua Nolan, Title IX officer. (*Id*. at ¶ 80.) The investigative report was issued on July 7, 2016, which led to an October 5, 2016 hearing. (*Id*. at ¶ 83 and 122.) The hearing panel found Plaintiff responsible for sexual assault, indicating that the preponderance of the evidence showed that effective consent was not maintained for the entire sexual encounter. (*Id*. at ¶ 153.) Specifically, the panel found there was not effective consent for the oral sex. (*Id*. at ¶ 155.) The panel concluded that when Jane told Plaintiff that she "was not sober," he should have known she was incapacitated. (*Id*. at ¶ 156.) Plaintiff was expelled from Oberlin College on October 11, 2016.

On October 24, 2016, Plaintiff appealed the hearing board's decision on three grounds: (1) new information not available at time of hearing had surfaced; (2) procedural and substantive errors with the process existed; and (3) the sanction was disproportionate to the alleged conduct. (*Id*. at ¶ 164.) Plaintiff's appeal was denied on November 21, 2016. (*Id*. at ¶ 174.) According to Plaintiff, Oberlin's appeals office determined that it would not consider the new testimony Plaintiff submitted, because it did not offer new information bearing on the factors that led to the hearing panel's

determination. (*Id.* at ¶ 174.) Plaintiff also alleges that Oberlin's appeals office rejected his assertion that the expulsion was too severe a sanction, indicating that the Policy clearly lays expulsion out as a possible outcome and fits with how Oberlin has handled similar cases. (*Id.* at ¶ 176.)

In filing this suit, Plaintiff alleges that the evidence presented during the hearing was insufficient to show that he could have known Jane was incapacitated, as required by the Oberlin's Sexual Assault Policy ("Policy"). (*Id.* at ¶ 7-10.) On April 1, 2011, the federal Department of Education's Office of Civil Rights ("OCR") published a nineteen-page "Dear Colleague" letter, which outlined and emphasized the importance of federal polices around sexual assault and sexual violence. In late 2012, a special task force, consisting of students, legal experts, educators, and the then Title IX Coordinator, Dr. Raimondo, was assembled to revise Oberlin's then existing sexual misconduct policy. (Id. at ¶ 38.) About eighteen months later, on May 1, 2014, the task forced completed, and Oberlin adopted, the new Policy. (*Id.* at ¶ 40.)

Plaintiff alleges that Oberlin's new Policy, under which his case was adjudicated, is rife with gender bias against men. (*Id.* at ¶ 11-14.) First, Plaintiff points to comments made by Dr. Raimondo, during a discussion hosted by the American Constitution Society ("ACS") on June 13, 2015, regarding the creation, content, and implementation of the Policy as evidence of this gender bias against men. (*Id.* at ¶ 11.) According to Plaintiff, Dr. Raimondo commented that one of the goals of the Policy was "...to ensure that the needs of survivors are met and their psychological and physical safety is guaranteed." (*Id.* at ¶ 39.) Dr. Raimondo also stated that the policy revisions hoped to "steer the conversation away from preventative measures...and instead to provide a clear understanding of rape culture..." (*Id.* at ¶ 39.) Dr. Raimondo also commented that she is personally uncomfortable with the use of the term "grey areas" when referring to sexual assaults not involving

the most egregious of behavior, because she believes the term is "used too often to discredit particularly women's experiences of violence." (*Id.* at ¶ 59.) Plaintiff alleges these kinds of comments are evidence of the gender bias that informed the Policy and its administration.

Second, Plaintiff cites statistics reported in the Oberlin College Spring 2016 Campus Climate Report ("Report") as evidence that gender bias is built into Title IX enforcement at Oberlin. (*Id.* at ¶12, 52-55.) The Report states that over the 2015–16 academic year, Oberlin's Title IX team received over 100 reports of sex-based discrimination and harassment from the campus community. (*Id.* at ¶ 52.) Most of those reports involved parties that requested no further action be taken. (*Id.* at ¶ 53.) About twenty percent of the 100 reports filed were referred to full investigation. (Mot. to Dismiss, Exhibit B, at 6.) Half of those reports were resolved through Oberlin's formal process. (Amend. Compl. at ¶ 53.) Of those that proceeded through formal resolution, 100 percent of respondents were found responsible for at least one charge. (*Id.* at ¶ 54.) Seventy percent of respondents were found responsible for all charges. (*Id.*)

Lastly, Plaintiff points to the previously mentioned so-called *Dear Colleague* letter of the OCR in 2011 and the fact that Oberlin was notified on November 24, 2015, three months prior to the incident at the center of this suit, that OCR would be investigating whether Oberlin had violated Title IX in a recent sexual assault disciplinary proceeding. (*Id.* at ¶ 48–51.) Oberlin was one of 161 colleges and universities nationwide whose handling of sexual discrimination complaints were under investigation by the OCR. (*Id.* at ¶ 46 n. 13.) OCR also indicated that the investigation would reach beyond the specific complaint that drew its attention, and be "a systemic investigation of the College's policies, procedures, and practices with respect to its sexual harassment and sexual assault complaint process." (*Id.* at ¶ 48.) Plaintiff alleges that this intense scrutiny created an

atmosphere of fear and apprehension among Oberlin's administration, which translated into gender bias against men accused of sexual conduct violations. (*Id*. at ¶ 51.)

### B. Procedural History

Following the filing of Plaintiff's Amended Complaint on February 7, 2018, Oberlin filed a Motion to Dismiss on March 23, 2018, requesting that the court dismiss the case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Mot. to Dismiss at 1.) Plaintiff filed a Response in Opposition (ECF No. 29) to Defendant's Motion to Dismiss on April 6, 2018. Defendant's Reply in Support of Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 30) was filed on April 13, 2018.

## II. LEGAL STANDARD

The court examines the legal sufficiency of Plaintiff's claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009), clarified the law regarding what the plaintiff must plead in order to survive a motion made pursuant to Rule 12(b)(6).

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain

"detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true."*Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court, in *Iqbal,* further explained the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Further, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. ANALYSIS

Oberlin moves to dismiss all of Plaintiff's claims. The court addresses each in turn.

**A. Title IX**

Oberlin argues that Plaintiff's Title IX claim (Count II) fails because Plaintiff has not shown that sex-based discrimination motivated the investigation and adjudication of the sexual assault charges brought against him. (Mot. to Dismiss at 1.) Oberlin asserts that: (1) courts consistently dismiss similar Title IX lawsuits that are based solely on a plaintiff's dissatisfaction with the outcome of the school's disciplinary process; (2) that Plaintiff's Title IX claim fails because it does not allege facts that show sex-based discrimination impacted Oberlin's adjudication of the sexual assault allegations, nor its Policy; and (3) that Plaintiff's Amended Complaint simply describes what he believes to be a flawed process and asserts that the outcome must be due to sex-based

discrimination. (*Id*. at 1, 7, and 8.) Plaintiff also alleges that he has identified a host of fact discussed in more detail below, demonstrating that gender bias played a role in the adjudication of his case in violation of Title IX. (*Id*.)

The Sixth Circuit applies the *Twombly/Iqbal* standard of plausibility pleading to Title IX cases. *Doe v. Miami Univ*., 882 F. 3d 579, 588 (6th Cir. 2018). Although the Second Circuit arguably has applied a less demanding pleading standard to Title IX claims, "it is contrary to [the Sixth Circuit] binding precedent." *Id* at 589.

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program receiving Federal financial assistance...." 20 U.S.C. § 1681(a). The Sixth Circuit instructs that, "Title IX is enforceable through a judicially implied private right of action, through which monetary damages are available." *Klemencic v. Ohio State Univ.,* 263 F.3d 504, 510 (6th Cir. 2001).

There are four theories of liability that a student who is "attacking a university disciplinary proceeding on grounds of gender bias" can potentially assert under Title IX. *Miami Univ.,* 882 F.3d at 589 (*citing Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). These theories are: (1) "erroneous outcome," (2) "selective enforcement," (3) "deliberate indifference" and (4) "archaic assumptions." *Doe v. Miami Univ*., 882 F. 3d at 589 (citing *Doe v. Cummins*, 662 Fed. App'x. 437, 451-52 (6th Cir. 2016)).

Count II of Plaintiff's Amended Complaint alleges that Oberlin is liable under Title IX pursuant to the erroneous outcome theory of liability. To plead an erroneous-outcome claim, a plaintiff must allege: "(1) 'facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding' and (2) a '*particularized ... causal connection* between the flawed outcome and gender bias.'" *Miami Univ*., 882 F.3d at 592 (citations omitted) (emphasis

added). Under this standard, "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Yusuf*, 35 F.3d at 715.

**1. Some articulable doubt.**

With respect to the first prong of the erroneous outcome standard, the court, drawing all reasonable inferences in favor of Plaintiff, finds that his accusations create "some articulable doubt" as to the accuracy of the hearing board's decision in the present case. Here, Plaintiff points to the length of the investigation in this case (120 days) as being excessive and without explanation. Oberlin's Policy states that investigations typically will be completed within twenty days. Plaintiff further argues that third-party testimony from Jane's friends present that night indicates that there were no outward signs of Jane's intoxication that a stranger could recognize. Plaintiff also alleges there are inconsistencies between Jane's Investigation Testimony and her Hearing Testimony regarding the circumstances surrounding the oral sex. In the investigative interview, Jane stated that Plaintiff asked her to perform oral sex. However, in the hearing, Jane testified that Plaintiff grabbed her neck and forced her to perform oral sex. Plaintiff maintains that the hearing board based its entire decision on a single piece of evidence to support their conclusion that Jane was incapacitated, her statement that "I am not sober." In addition, Plaintiff also alleges that the hearing board improperly applied its own definition of incapacitation outlined in the Policy. The only issue here is whether Plaintiff has met his pleading burden, and these allegations indicate that he has. *See Doe v. Univ., of Cincinnati*, No. 1:16CV987, 2018 WL1521631, at *5 (S.D. Ohio Mar. 28, 2018) (finding that the plaintiff pleaded sufficient facts to cast articulable doubt where he was not allowed to confront and question Roe through the panel which would have undoubtedly aided the truth-seeking process and reduced the likelihood of an erroneous deprivation); *Miami Univ.*, 882 F.3d at 592 (same where

the plaintiff alleged unresolved inconsistency in Roe's statement, unexplained discrepancy in hearing panel's finding of fact, and alleged use of an erroneous definition of consent).

### 2. A particularized causal connection.

With respect to the second prong of the erroneous outcome standard, the court finds that Plaintiff has not alleged facts showing "a 'particularized...causal connection between the flawed outcome and gender bias.'" *Miami Univ.*, 882 F. 3d at 593 (citing *Cummins*, 662 Fed. App'x. at 452 (quoting *Yusuf*, 35 F.3d at 715.)) The Sixth Circuit explains that, "[s]uch allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Miami Univ.*, 882 F.3d at 594 (quoting *Yusuf*, 35 F.3d at 715). In an effort to show this particularized causal connection, Plaintiff asserts: (1) gender bias pervades the entire adjudication process, illustrated in part by comments made by Dr. Raimondo, (2) Campus Climate Statistics for 2015–2016 show gender bias, and (3) the *Dear Colleague* Letter and the OCR Investigation created an environment ripe for such gender bias. The court finds that, taken together, these assertions are insufficient to meet Plaintiff's pleading burden.

### a. Statements by pertinent university officials.

Plaintiff has not plead any facts showing that the members who participated in his disciplinary hearing made statements, prior to or during his hearing, that would suggests they had gender bias. However, Plaintiff alleges that Oberlin's gender bias is illustrated by comments made by Dr. Raimondo, a "pertinent university official," during a panel discussion, which took place approximately 16 months prior to Plaintiff's hearing. Therein, Dr. Raimondo commented that one of the goals of the Policy was "...to ensure that the needs of survivors are met and their psychological and physical safety is guaranteed." (*Id*.) Dr. Raimondo also stated that the policy revisions hoped to

-9-

"steer the conversation away from preventative measures...and instead to provide a clear understanding of rape culture..." (*Id.*) Dr. Raimondo also commented that she is personally uncomfortable with the use of the term "grey areas" when referring to sexual assaults not involving the most egregious of behavior, because she believes the term is "used too often to discredit particularly women's experiences of violence." (*Id.* at ¶ 59.) According to Plaintiff, these comments are evidence of the gender bias that informed the Policy and its administration. However, if a plaintiff's pleadings "internally contradict verifiable facts central to his claims, that makes his allegations implausible*." Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).

In viewing the entire video containing Dr. Raimondo's comments, which was attached to Plaintiff's complaint, it is clear that none of her comments spoke directly about Plaintiff or his case in particular. Nor did the video suggest that Oberlin's Policy is motivated by gender bias. Plaintiff jumps to the conclusion that this kind of "survivor-centered" approach to campus sexual assault must mean that the Policy would also have to be biased against men. However, "Plaintiffs' mere belief that Defendants acted with such ulterior motives is insufficient to state a claim for relief." *Doe v. Univ. of Cincinnati*, 173 F.Supp3d 586, 602 (S.D.Ohio 2016) (citing *Center for Bio-Ethical Reform Inc. v. Napolitano*, 648 F.3d 365, 377 (6th Cir. 2011)). Although Oberlin's process maybe designed to be sensitive to victims' needs, this is not the same as gender bias; because, sexual assault victims can be either male or female. *Id.* at 606–607. In any event, Dr. Raimondo's comments cannot be read to support a particularized casual connection between Plaintiff's flawed outcome and gender bias.

It perhaps should also be noted that Plaintiff pointed to activities of another College official, Associate Dean Adrian Bautista, who he maintains re-tweeted information which he felt evidenced gender bias as well as participated in a workshop of an organization, Ohio Alliance to End Sexual

Violence, which he believes teaches gender bias. Consequently, Plaintiff does not feel Oberlin should have allowed Dr. Bautista to hear the appeal in a December 2016 sexual assault case, involving allegations brought by a female Oberlin student against a male student. (Amend. Compl. at ¶¶ 62–66.) First, Plaintiff does not allege that Dr. Bautista heard his appeal. Oberlin points out that he could not, as Dr. Bautista did not hear his appeal. Second, Plaintiff appears to be referring to an appeal in the other student's case which, from the reading of his Complaint, appears to have been decided after Plaintiff's hearing. Lastly, the statements and ideas which he tributes to Dr. Bautista, as a result of his re-tweeting and participation in the workshop of the above-mentioned organization, are statements indicating victims should be taken seriously, not that males should be railroaded. Consequently, Plaintiff's allegations against Dr. Bautista are not sufficient to support a particularized causal connection to a flawed outcome in his case.

### b. Plaintiff's purported statistical evidence.

Next, Plaintiff alleges that statistics reported in the Oberlin College Spring 2016 Campus Climate Report show a pattern of discrimination against males in Oberlin's investigation and adjudication of sexual-misconduct claims. Specifically, Plaintiff focuses on the fact that of those cases that were investigated and resolved through Oberlin's formal process in 2015–2016, 100 percent of respondents were found responsible for at least one charge. 70 percent of respondents were found responsible on all charges. Plaintiff alleges "upon information and belief, the vast majority of these respondents were men, and the vast majority of their accusers were women." (Amend. Compl. at ¶ 210.)

The statistics are unavailing. Based on the Campus Climate report, of the 100 cases of sex-based discrimination and harassment reported in 2015–2016, most, 80 percent, involved parties who requested no further action. (Mot. to Dismiss, Exhibit B, at 6.) About twenty percent of the 100

-11-

reports filed were referred to full investigation. (*Id*.) Only half of those reports, 10 cases, continued through adjudication of the cases. (*Id*.) Plaintiff places stress on the fact that of the 10 cases that went to adjudication, each of the persons accused was found guilty of at least one charge. This cannot be viewed as supporting gender bias, especially in the context of the overall system employed at Oberlin where 90% of the complaints of discrimination were resolved short of adjudication.

In support of his claim of gender bias, Plaintiff also alleges that, "the *vast majority* of the Oberlin students. . . accused of sexual misconduct are men." This by itself is not indicative of discrimination or bias against men. Plaintiff does not claim that *only* men were found responsible for misconduct. As outlined in *Doe v. Univ. of Dayton*, this is "not the type of pattern that would show an improper influence of gender. Indeed, this sadly, is just what the court would expect. According to the Department of Justice, over 95% of sexual assaults are perpetrated by males, while fewer than 3% are by females." *Doe v. Univ. of Dayton*, No. 3:17-CV-134, 2018 WL 1393894, at *9 (S.D. Ohio 2018). A pattern that would support a claim of gender bias would involve sexual assault accusations against women that were not investigated or adjudicated by the College. *Id*. Plaintiff makes no such claim here.

Further, "the analysis of a Title IX violation is similar in many respects to a Title VII, with the exception that, unlike a Title VII claim, a Title IX claim may not be premised on the 'disparate impact' a policy has with respect to a protected group." *Doe v. College of Wooster*, 243 F. Supp.3d 875 (6th Cir. 2017) (citing *Doe v. Brown Univ.*, 166 F.Supp.3d 177, 184 (D. R.I. 2016)). In sum, the fact that most of the accused are men, or that in the ten cases that went to final adjudication, the accused was found guilty of at least one charge is not sufficient to support a finding of a particularized causal connection between a flawed income in Plaintiff's case and gender bias.

### c. External pressure.

Lastly, Plaintiff also alleges that the investigation and adjudication of the allegations made against him were done within an environment of great scrutiny and pressure created by the 2011OCR *Dear Colleague* letter that was issued to more than 200 colleges and universities across the country. This letter clarified that the Title IX sexual harassment requirements also cover sexual violence, and laid out specific Title IX requirements applicable to sexual violence. In this letter, the Secretary of Education threatened withholding federal funding to universities that did not follow the guidelines provided.

The Southern District of Ohio has observed:

> [C]ourts in the Sixth Circuit repeatedly have found that generalized allegations of hostility towards male students accused of sexual assault at universities arising from the OCR's now-rescinded Dear Colleague Letter…are not sufficient to establish the required causal connection. To begin, a conclusory allegation that the Dear Colleague Letter induced a university to discriminate against male students so as avoid (sic) the loss of federal funds is not sufficient evidence to state a plausible claim of gender bias.

*Gischel v. Univ. of Cincinnati*, 302 F. Supp. 3d 961 (S.D. Ohio 2018) (citing *Cummins*, 662 Fed. App'x. at 453; *see also Doe v. College of Wooster*, 243 F.Supp.3d 875, 887 (N.D. Ohio 2017) ("[A]llegations that Wooster's more stringent stance against campus sexual assault is the result of pressure exerted by the Department of Education through the issuance of the Dear Colleague Letter fail to support a plausible inference of gender discrimination."); *Doe v. Univ. of Cincinnati*, 173 F. Supp.3d at 602 ("Plaintiffs' allegations concerning the sexual assault training provided to UC staff members and pressure allegedly exerted on universities by the Department of Education to intensify their response to sexual assault complaints fall short of creating a reasonable inference that the ARC panels in Plaintiffs' cases were biased[]"). The Sixth Circuit has recently explained that external pressure from campus organizations and government agencies such as the federal Department of

Education ,can "provide a backdrop that. . . gives rise to a plausible [Title IX] claim." *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018). However, the court made clear that external pressure alone is not enough. Rather, external pressure "combined with other circumstantial evidence of bias in [a complainant's] specific proceeding" is what makes a claim plausible. *Id*.

Further, while plaintiff talks about the climate engendered around the OCR investigation of the student complaint, he points to only one article which simultaneously mentions that OCR would be investigating student complaints to determine whether Cleveland State, Ohio State and Oberlin had violated Title IX. There is no allegation by Plaintiff that the publicity was widespread regarding the complaint which triggered the investigation, let alone that there was criticism in the media in regard to the matter or how Oberlin handled complaints of gender bias. He did not allege that the circumstances pertaining to his own case were widely known on campus and subject to widespread debate, or was the subject of media attention or criticism.

In sum, there is nothing to suggest here that there was anything in the way of external pressure that would support a particularized causal connection between a flawed outcome in Plaintiff's case. Further, Plaintiff has not combined his external pressure evidence with other circumstantial evidence of gender bias found during his specific hearing. In that regard, his case is distinguishable from *Doe v. Miami Univ.*, wherein the Sixth Circuit reversed the District Court's decision granting the defendant's motion to dismiss. *Miami Univ*., 882 F.3d 579. In *Miami*, unlike here, the plaintiff presented an affidavit from an attorney who represented many students in Miami University's disciplinary proceedings, which described "a pattern of the University pursuing investigations concerning male students, but not female students." *Id*. at 593. Also, in that case, the plaintiff pointed to the fact that Miami University initiated an investigation into his behavior but not Jane's behavior, although Miami University was aware that the plaintiff was too intoxicated to

consent to a kiss from Jane during the incident, as evidence that the University made disciplinary decisions based on a student's gender rather than the facts presented. *Id*. at 593–94. Plaintiffs makes no such claim here. Further, the above-mentioned allegations regarding Miami were in addition to allegations that it was under significant pressure to increase its "zealousness" of prosecution of sexual assault allegations, because it was already a defendant in a lawsuit brought by a female student who alleged "that she would not have been assaulted had the University expelled her attacker for prior offenses." *Id*. at 594. At the time of Plaintiff's hearing, Oberlin was not a Defendant in any case involving its Title IX disciplinary process.

This case is also distinguishable from *Doe v. Baum*, where the Sixth Circuit recently reversed the lower court's decision granting the defendant's motion to dismiss. 903 F.3d at 575. In *Baum*, the court concluded the plaintiff had alleged sufficient facts to infer gender bias when the adjudication board, "credited exclusively female testimony (from Roe and her witnesses) and rejected all of the male testimony (from Doe and his witnesses). In doings so, the [adjudication board] explained that Doe's witnesses lacked credibility because many of them were fraternity brothers of [Doe]. But the [adjudication board] did not similarly note that several of Roe's witnesses were her sorority sisters, nor did it note that they were female." *Id*. In the present case, Plaintiff alleges that the hearing board based its entire decision on a single piece of evidence to support their conclusion that Jane was incapacitated, her statement that "I am not sober." Plaintiff does not allege, as in *Baum*, that the hearing tribunal credited the testimony of witnesses based on whether they were females closely affiliated with the accuser or males closely affiliated with the accused. Indeed, in this case, Plaintiff points to the testimony of female witnesses who were friends of the accused which he claims supports his case, but was ignored by the hearing tribunal. This testimony was discussed when determining whether Plaintiff had shown some articulable doubt as to the accuracy of the hearing

boards decision. Therefore, if one were to conclude that there was external pressure such as to "provide a "backdrop" as referenced in *Baum*, *Id*. at 586, there is not other evidence of gender bias in regard to Plaintiff's specific proceeding, as in *Baum*. *See id.*

Consequently, because Plaintiff has not pled sufficient facts to establish a particularized causal connection between a flawed outcome based on gender bias, the court hereby grants Defendants' Motion to Dismiss this claim.

### B. State Law Claims

In response to Plaintiff's state law claims, Oberlin argues that if the court dismisses the Title IX claim, the court should also dismiss the remaining state law claims over which it has supplemental jurisdiction pursuant to 28 U.S.C. §1367(c)(3). Due to the dismissal of Plaintiff's Title IX claim, the court dismisses Plaintiff's state law claims for breach of contract and negligence without prejudice. *E.g., Mallory v. Ohio Univ.*, 76 Fed App'x. 634, 641 (6th Cir. 2003)( explaining that "the usual course is for the district court to dismiss state-law claims without prejudice if all federal claims are disposed of"); *Doe v. Case W. Reserve Uni.,* No.1:14CV2044, 2015 WL 5522001, at *8 (N.D. Ohio Sept. 16, 2015).

### IV. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion to Dismiss (ECF No. 28) Plaintiff's Title IX claim for failure to state a claim upon which relief can be granted. The court also dismisses Plaintiff's state law claims for breach of contract and negligence without prejudice.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

March 31, 2019